**MEANSNO, NoFeeRequired, CLOSED, APPEAL**

# U.S. Bankruptcy Court
## Northern District of Illinois (Chicago)
## Bankruptcy Petition #: 11−47270

|  |  |
|---|---|
| *Assigned to:* Honorable Judge Timothy A. Barnes | *Date filed:* 11/22/2011 |
| Chapter 7 | *Date reopened:* 09/18/2012 |
| Voluntary | *Date terminated:* 02/07/2013 |
| No asset | *Debtor discharged:* 03/07/2012 |
|  | *341 meeting:* 01/05/2012 |
|  | *Deadline for objecting to discharge:* 03/05/2012 |

*Debtor disposition:* Standard Discharge

| | |
|---|---|
| ***Debtor***<br>**Jualynn Kirkel**<br>6145 North Sheridan Road<br>Apt. 30C<br>Chicago, IL 60660<br>COOK−IL<br>SSN / ITIN: xxx−xx−2906<br>*aka* **Jualynn M. Kirkel**<br>*aka* **Julie Mae Kirkel** | represented by **John F Cloutier**<br>John F Cloutier Attorney at Law<br>5923 S. Kolmar Ave<br>Chicago, IL 60629<br>847 275−6358<br>Fax : 727−865−5272<br>Email: JohnCloutierLaw@aol.com<br><br>**Roland Schlosser**<br>Law Office of Roland Schlosser<br>Suite 1242<br>53 West Jackson Boulevard<br>Chicago, IL 60604<br>312−488−4884<br>Fax : 312−488−4640<br>Email: schlosserlaw@gmail.com<br>*TERMINATED: 09/18/2012* |

***Trustee***
**Deborah Michelle Gutfeld**
Perkins Coie LLP
131 South Dearborn
Chicago, IL 60603
312−324−8573

***U.S. Trustee***
**Patrick S Layng**
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
312−886−5785

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 11/22/2011 | | 1 | Chapter 7 Voluntary Petition Fee Amount $306, Filed by Roland Schlosser on behalf of Jualynn Kirkel (Schlosser, Roland) (Entered: 11/22/2011) |
| 11/22/2011 | | 2 | |

| | | | |
|---|---|---|---|
| | | | Meeting of Creditors with 341(a) meeting to be held on 01/05/2012 at 01:30 PM at 219 South Dearborn, Office of the U.S. Trustee, 8th Floor, Room 800, Chicago, Illinois 60604. Objections for Discharge due by 03/05/2012. (Schlosser, Roland) (Entered: 11/22/2011) |
| 11/22/2011 | | 3 | Receipt of Voluntary Petition (Chapter 7)(11−47270) [misc,volp7a] ( 306.00) Filing Fee. Receipt number 18621627. Fee Amount $ 306.00 (U.S. Treasury) (Entered: 11/22/2011) |
| 11/22/2011 | | 4 | Declaration Re: Electronic Filing Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Schlosser, Roland) (Entered: 11/22/2011) |
| 11/22/2011 | | 5 | Statement of Social Security Number(s) Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Schlosser, Roland) (Entered: 11/22/2011) |
| 11/22/2011 | | 6 | Certificate of Credit Counseling Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Schlosser, Roland) (Entered: 11/22/2011) |
| 11/23/2011 | | 7 | Request for Chapter 7 341 Meeting of Creditors . (Iwinski, Allen) (Entered: 11/23/2011) |
| 11/23/2011 | | 8 | BNC Certificate of Notice − Meeting of Creditors. (RE: 7 Request for Chapter 7 341 Meeting of Creditors). No. of Notices: 10. Notice Date 11/25/2011. (Admin.) (Entered: 11/25/2011) |
| 11/29/2011 | | 9 | Request for Service of Notices Filed by Joshua M Grossman on behalf of Bridgeview Bank Group. (Grossman, Joshua) (Entered: 11/29/2011) |
| 12/06/2011 | | 10 | Request for Service of Notices Filed by American Express Bank FSB (Weisman, Gilbert) (Entered: 12/06/2011) |
| 12/06/2011 | | 11 | Summary of Schedules with Statistical Summary Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Schlosser, Roland) (Entered: 12/06/2011) |
| 12/06/2011 | | 12 | Schedules A−J Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Schlosser, Roland) (Entered: 12/06/2011) |
| 12/06/2011 | | 13 | Chapter 7 Statement of Current Monthly Income and Means Test Calculation − Form 22A. Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Schlosser, Roland) (Entered: 12/06/2011) |
| 12/06/2011 | | 14 | Chapter 7 Individual Debtor's Statement of Intention. Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Schlosser, Roland) (Entered: 12/06/2011) |
| 12/13/2011 | | 15 | Notice of Motion and Motion for Relief from Stay as to 6145 N. Sheridan Road Unit 30C, Chicago, IL. Fee Amount $176, Filed by Gloria C Tsotsos on behalf of JPMorgan Chase Bank, National Association. Hearing scheduled for 12/21/2011 at 10:00 AM at 219 South Dearborn, Courtroom 642, Chicago, Illinois 60604. (Attachments: # 1 Proposed Order Relief Order# 2 Statement Accompanying Relief From Stay) (Tsotsos, Gloria C) (Entered: 12/13/2011) |

| | | | |
|---|---|---|---|
| 12/13/2011 | | 16 | Receipt of Motion for Relief Stay(11−47270) [motion,mrlfsty] ( 176.00) Filing Fee. Receipt number 18833358. Fee Amount $ 176.00 (U.S. Treasury) (Entered: 12/13/2011) |
| 12/21/2011 | | 17 | Order Granting Motion for Relief from Stay (Related Doc # 15). Signed on 12/21/2011. (Gomez, Denise) (Entered: 12/22/2011) |
| 01/02/2012 | | 18 | Statement of Financial Affairs Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Schlosser, Roland) (Entered: 01/02/2012) |
| 01/09/2012 | | 19 | Chapter 7 Trustee's Report of No Distribution: I, Deborah Michelle Gutfeld, having been appointed trustee of the estate of the above−named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above−named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 2 months. Assets Abandoned (without deducting any secured claims): $ 586900.00, Assets Exempt: $ 144000.00, Claims Scheduled: $ 897463.07, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 897463.07. Filed by Trustee Deborah Michelle Gutfeld (RE: 2 Meeting (Chapter 7)). (Gutfeld, Deborah) (Entered: 01/09/2012) |
| 02/06/2012 | | 20 | Notice of Required Document(s) for Discharge. (admin) (Entered: 02/06/2012) |
| 02/06/2012 | | 21 | BNC Certificate of Notice − Notice of Required Document(s) for Discharge (RE: 20 Notice of Required Document(s) for Discharge − Auto). No. of Notices: 1. Notice Date 02/08/2012. (Admin.) (Entered: 02/08/2012) |
| 03/05/2012 | | 22 | Debtor's Certification of Completion of Instructional Course Concerning Personal Financial Management Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Attachments: # 1 Certificate) (Schlosser, Roland) (Entered: 03/05/2012) |
| 03/05/2012 | | 23 | Reaffirmation Agreement (Signed by Attorney for Debtor) with Pacific Global Bank Filed by David Richardson on behalf of Pacific Global Bank. (Richardson, David) (Entered: 03/05/2012) |
| 03/05/2012 | | 24 | Reaffirmation Agreement (Signed by Attorney for Debtor) with Pacific Global Bank Filed by David Richardson on behalf of Pacific Global Bank. (Richardson, David) (Entered: 03/05/2012) |
| 03/05/2012 | | 25 | Reaffirmation Agreement (Signed by Attorney for Debtor) with Pacific Global Bank Filed by David Richardson on behalf of Pacific Global Bank. (Richardson, David) (Entered: 03/05/2012) |
| 03/05/2012 | | 26 | Reaffirmation Agreement (Signed by Attorney for Debtor) with Pacific Global Bank Filed by David Richardson on behalf of Pacific Global Bank. (Richardson, David) (Entered: 03/05/2012) |

| | | | |
|---|---|---|---|
| 03/06/2012 | | 27 | Reviewed − No Presumption of Undue Hardship (RE: 23 Reaffirmation Agreement, 24 Reaffirmation Agreement, 25 Reaffirmation Agreement, 26 Reaffirmation Agreement). (Gomez, Denise) (Entered: 03/06/2012) |
| 03/07/2012 | | 28 | Amended Statement of Social Security Number(s) Filed by Roland Schlosser on behalf of Jualynn Kirkel. (Schlosser, Roland) (Entered: 03/07/2012) |
| 03/07/2012 | | 29 | Request for Discharge Order for Debtor . (Gomez, Denise) (Entered: 03/07/2012) |
| 03/07/2012 | | 30 | BNC Certificate of Notice − Order of Discharge. (RE: 29 Request for Discharge Order). No. of Notices: 8. Notice Date 03/09/2012. (Admin.) (Entered: 03/09/2012) |
| 03/12/2012 | | 31 | Bankruptcy Case Closed and Trustee Discharged . (Gomez, Denise) (Entered: 03/12/2012) |
| 09/07/2012 | | 32 | Notice of Motion and Routine Routine Motion To Substitute Attorney Filed by John F Cloutier on behalf of Jualynn Kirkel. Hearing scheduled for 9/18/2012 at 09:30 AM at 219 South Dearborn, Courtroom 642, Chicago, Illinois 60604. (Cloutier, John) (Entered: 09/07/2012) |
| 09/07/2012 | | 33 | Notice of Motion and Motion to Reopen Chapter 7 Case (No Fee Required) Filed by John F Cloutier on behalf of Jualynn Kirkel. Hearing scheduled for 9/18/2012 at 09:30 AM at 219 South Dearborn, Courtroom 642, Chicago, Illinois 60604. (Attachments: # 1 Proposed Order) (Cloutier, John) (Entered: 09/07/2012) |
| 09/07/2012 | | 34 | Proposed Order − Order to Substitute Attorney Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 32 Motion to Substitute Attorney). (Cloutier, John) (Entered: 09/07/2012) |
| 09/10/2012 | | 35 | Notice of Motion and Motion for Sanctions against Bridgeview Bank Group and their Attorneys Joshua Grossman and Kevin Ameriks Filed by John F Cloutier on behalf of Jualynn Kirkel. Hearing scheduled for 10/10/2012 at 09:30 AM at 219 South Dearborn, Courtroom 642, Chicago, Illinois 60604. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit) (Cloutier, John) Modified on 9/12/2012 **Missing Proposed Order, Filer Refiled** (Green, Charlie). (Entered: 09/10/2012) |
| 09/10/2012 | | 36 | Proposed Order − Order for Sanctions Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) (Entered: 09/10/2012) |
| 09/12/2012 | | 37 | CORRECTIVE ENTRY Missing Proposed Order, Filer Refiled (RE: 35 Motion for Sanctions). (Green, Charlie) (Entered: 09/12/2012) |
| 09/18/2012 | | 38 | Order Case Reassigned. Judge Timothy A. Barnes added to case. Involvement of Judge Susan Pierson Sonderby terminated . Signed on 9/18/2012 (Gomez, Denise) (Entered: 09/19/2012) |
| 09/18/2012 | | 39 | Order Granting Motion to Substitute Attorney adding John F Cloutier for Jualynn Kirkel, terminating Roland Schlosser. (Related |

| | | | |
|---|---|---|---|
| | | | Doc #32). Signed on 9/18/2012. (Gomez, Denise) (Entered: 09/19/2012) |
| 09/18/2012 | | 40 | Order Granting Motion To Reopen Chapter 7 Case (Related Doc # 33). Signed on 9/18/2012. (Gomez, Denise) (Entered: 09/19/2012) |
| 10/08/2012 | | 41 | Appearance Filed by Adam B. Rome on behalf of Bridgeview Bank Group. (Rome, Adam) (Entered: 10/08/2012) |
| 10/10/2012 | | 42 | (E)Hearing Continued (RE: 35 Sanctions). hearing scheduled for 12/04/2012 at 10:30 AM at Courtroom 642 219 South Dearborn, Chicago, IL, 60604.. Signed on 10/10/2012. (McClendon, Annette) (Entered: 10/10/2012) |
| 10/10/2012 | | 43 | Order Scheduling (RE: 35 Motion for Sanctions). Debtor's Statement due by 10/26/2012. Response due by 11/16/2012. Status hearing to be held on 12/4/2012 at 10:30 AM at 219 South Dearborn, Courtroom 642, Chicago, Illinois 60604. Signed on 10/10/2012 (Gomez, Denise) (Entered: 10/12/2012) |
| 10/26/2012 | | 44 | **Incorrect Event, Filer Notified to Refile** Exhibit(s) Exhibit A−B Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 45 | **Incorrect Event, Filer Notified to Refile** Exhibit(s) Exhibit B−D Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 46 | **Incorrect PDF, Filer Notified to Refile** Exhibit(s) Exhibit D Continued Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 47 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exhibit D Continued #2 Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 48 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exhibit D Remainder and Exhibit E Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 49 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exhibits E−P Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 50 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exhibit Q Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 51 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exibit R Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, |

| | | | |
|---|---|---|---|
| | | | Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 52 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exhibits S and Part of Exhibit T Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 53 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exhibit T remainder Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 54 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exhibit V Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 55 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exhibit V remainder Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 10/26/2012 | | 56 | **Incomplete PDF, Filer Notified to Refile** Exhibit(s) Exhibits W to AA Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/12/2012 (Green, Charlie). (Entered: 10/26/2012) |
| 11/12/2012 | | 57 | CORRECTIVE ENTRY Incorrect Event, Filer Notified to Refile (RE: 44 Exhibit). (Green, Charlie) (Entered: 11/12/2012) |
| 11/12/2012 | | 58 | CORRECTIVE ENTRY Incorrect Event, Filer Notified to Refile (RE: 45 Exhibit). (Green, Charlie) (Entered: 11/12/2012) |
| 11/12/2012 | | 59 | CORRECTIVE ENTRY Incorrect PDF, Filer Notified to Refile (RE: 46 Exhibit). (Green, Charlie) (Entered: 11/12/2012) |
| 11/12/2012 | | 60 | CORRECTIVE ENTRY Incomplete PDF, Filer Notified to Refile (RE: 47 Exhibit, 48 Exhibit, 49 Exhibit, 50 Exhibit, 51 Exhibit, 52 Exhibit, 53 Exhibit, 54 Exhibit, 55 Exhibit, 56 Exhibit). (Green, Charlie) (Entered: 11/12/2012) |
| 11/15/2012 | | 61 | Notice of Motion and Motion to Extend Time file response to motion for sanctions Filed by Adam B. Rome on behalf of Bridgeview Bank Group. Hearing scheduled for 11/20/2012 at 10:00 AM at 219 South Dearborn, Courtroom 613, Chicago, Illinois 60604. (Attachments: # 1 Proposed Order) (Rome, Adam) (Entered: 11/15/2012) |
| 11/18/2012 | | 62 | Statement Debtor's Evidentiary Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Attachments: # 1 Exhibit Exhibit A and Exhibit B Part 1# 2 Exhibit Exhibit B Part 2 through Exhibit C Part 1# 3 Exhibit Exhibit D Part 2# 4 Exhibit Exhibit D Part 3# 5 Exhibit Exhibit D Part 4 and Exhibit E# 6 Exhibit Exhibit F through Exhibit P# 7 Exhibit Exhibit Q# 8 Exhibit Exhibit R − Affidavit of Debtor# 9 Exhibit Exhibit S and Exhibit T# 10 Exhibit Exhibit T Final Part# 11 Exhibit Exhibit U and Exhibit V Part 1# 12 Exhibit Exhibit V Final Part# 13 Exhibit Exhibits W through Exhibit AA) (Cloutier, John) (Entered: |

| | | | |
|---|---|---|---|
| | | | 11/18/2012) |
| 11/18/2012 | | 63 | Notice of Filing Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 35 Motion for Sanctions). (Cloutier, John) Modified on 11/28/2012 to correct related document #62 (Green, Charlie). (Entered: 11/18/2012) |
| 11/20/2012 | | 64 | **Incomplete Event Entered** Order Granting Motion to Extend Time (Related Doc # 61). Response due by 12/7/2012. Signed on 11/20/2012. (Livermore, Corrina) Modified on 11/28/2012 (Sims, Mildred). (Entered: 11/21/2012) |
| 11/20/2012 | | 66 | Order Granting Motion to Extend Time (Related Doc # 61). Response due by 12/7/2012. Status hearing to be held on 1/8/2013 at 10:30 AM at 219 South Dearborn, Courtroom 613, Chicago, Illinois 60604. Signed on 11/20/2012. (Livermore, Corrina) (Entered: 11/28/2012) |
| 11/28/2012 | | 65 | CORRECTIVE ENTRY to correct related document #62 (RE: 63 Notice of Filing). (Green, Charlie) (Entered: 11/28/2012) |
| 11/28/2012 | | 67 | CORRECTIVE ENTRY Incomplete Event Entered (RE: 64 Order on Motion to Extend Time). (Sims, Mildred) (Entered: 11/28/2012) |
| 12/04/2012 | | 68 | (E)Hearing Continued (RE: 35 Motion for Sanctions against Bridgeview Bank Group and their Attorneys ). hearing scheduled for 01/08/2013 at 10:30 AM at Courtroom 613 219 South Dearborn, Chicago, IL, 60604.. Signed on 12/04/2012. (McClendon, Annette) (Entered: 12/04/2012) |
| 12/07/2012 | | 69 | Response to (related document(s): 35 Motion for Sanctions) Filed by Adam B. Rome on behalf of Kevin Ameriks, Joshua Grossman, Bridgeview Bank Group (Attachments: # 1 Exhibit Ex A−D) (Rome, Adam) (Entered: 12/07/2012) |
| 12/07/2012 | | 70 | Notice of Motion and Motion to Exceed Page Limitation Filed by Adam B. Rome on behalf of Kevin Ameriks, Bridgeview Bank Group, Joshua Grossman for 12/12/2012 at 10:00 AM at 219 South Dearborn, Courtroom 613, Chicago, Illinois 60604. (Attachments: # 1 Exhibit Ex A# 2 Exhibit Exhibits to Exhibit A# 3 Proposed Order) (Rome, Adam) (Entered: 12/07/2012) |
| 12/12/2012 | | 71 | (E)Order Granting Motion to Exceed Page Limitation (Related Doc # 70 ). Signed on 12/12/2012. (McClendon, Annette) (Entered: 12/12/2012) |
| 01/08/2013 | | 72 | (E)Hearing Continued (RE: 35 Motion for Sanctions against Bridgeview Bank Group and their attorneys). Evidentiary Hearing scheduled for 02/06/2013 at 01:30 PM at Courtroom 613 219 South Dearborn, Chicago, IL, 60604. Signed on 01/08/2013. (McClendon, Annette) (Entered: 01/09/2013) |
| 02/06/2013 | | 73 | Order Granting in part, Denying in part Motion For Sanctions (Related Doc # 35). Signed on 2/6/2013. (Gomez, Denise) (Entered: 02/07/2013) |
| 02/07/2013 | | 74 | |

| | | | |
|---|---|---|---|
| | | | Bankruptcy Case Closed and Trustee Discharged . (Gomez, Denise) (Entered: 02/07/2013) |
| 02/20/2013 | | 75 | Notice of Motion and Motion to Reopen Chapter 7 Case (No Fee Required) Filed by John F Cloutier on behalf of Jualynn Kirkel. Hearing scheduled for 4/2/2013 at 10:00 AM at 219 South Dearborn, Courtroom 642, Chicago, Illinois 60604. (Cloutier, John) Modified on 2/24/2013 **Missing Proposed Order Filer Notified to Refile**(Green, Charlie). (Entered: 02/20/2013) |
| 02/21/2013 | | 76 | Proposed Order − Order Reopening Chapter 7 Case Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 75 Motion to Reopen Chapter 7 Case). (Cloutier, John) (Entered: 02/21/2013) |
| 02/24/2013 | | 77 | CORRECTIVE ENTRY Missing Proposed Order Filer Notified to Refile (RE: 75 Motion to Reopen Chapter 7 Case). (Green, Charlie) (Entered: 02/24/2013) |
| 02/25/2013 | | 78 | Notice of Motion and Motion to Alter or Amend Judgment/Order (related document(s): 73 Order on Motion For Sanctions) Filed by John F Cloutier on behalf of Jualynn Kirkel. Hearing scheduled for 5/7/2013 at 10:00 AM at 219 South Dearborn, Courtroom 642, Chicago, Illinois 60604. (Attachments: # 1 Proposed Order) (Cloutier, John) (Entered: 02/25/2013) |
| 03/21/2013 | | 79 | Objection to (related document(s): 75 Motion to Reopen Chapter 7 Case) Filed by Adam B. Rome on behalf of Kevin Ameriks, Bridgeview Bank Group, Joshua Grossman (Rome, Adam) (Entered: 03/21/2013) |
| 04/02/2013 | | 80 | Amended Notice of Motion Filed by John F Cloutier on behalf of Jualynn Kirkel (RE: 78 Motion to Alter or Amend Judgment or Order/New Trial( Rule 9023)). Hearing scheduled for 5/9/2013 at 10:00 AM at 219 South Dearborn, Courtroom 642, Chicago, Illinois 60604. (Cloutier, John) (Entered: 04/02/2013) |
| 04/02/2013 | | 81 | Order Denying Motion To Reopen Chapter 7 Case (Related Doc # 75). Signed on 4/2/2013. (Gomez, Denise) (Entered: 04/03/2013) |
| 04/05/2013 | | 82 | Hearing Scheduled for 5/7/2013 at 10:00 a.m. is Stricken (RE: 78 Motion to Alter or Amend Judgment or Order/New Trial( Rule 9023). (McClendon, Annette) (Entered: 04/05/2013) |
| 04/16/2013 | | 83 | Notice of Appeal to District Court. Filed by John F Cloutier on behalf of Jualynn Kirkel. Fee Amount $298 (RE: 73 Order on Motion For Sanctions). Appellant Designation due by 04/30/2013. Transmission of Record Due by 05/28/2013. (Cloutier, John) (Entered: 04/16/2013) |
| 04/16/2013 | | 84 | Receipt of Notice of Appeal(11−47270) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number 23131917. Fee Amount $ 298.00 (re:Doc# 83) (U.S. Treasury) (Entered: 04/16/2013) |
| 04/17/2013 | | 85 | Notice of Filing to Bk Judge and Parties on Service List (RE: 83 Notice of Appeal). (Weston, Carel Dell) (Entered: 04/17/2013) |
| 04/30/2013 | | 86 | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by John F Cloutier on behalf of Jualynn Kirkel. (RE: |

| | | | |
|---|---|---|---|
| | | | 83 Notice of Appeal). (Cloutier, John) (Entered: 04/30/2013) |
| 05/01/2013 | | 87 | Statement of Issues on Appeal Filed by John F Cloutier on behalf of Jualynn Kirkel. (RE: 83 Notice of Appeal). (Cloutier, John) (Entered: 05/01/2013) |
| 05/13/2013 | | 88 | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Adam B. Rome on behalf of Kevin Ameriks, Bridgeview Bank Group, Joshua Grossman. (RE: 83 Notice of Appeal). (Rome, Adam) (Entered: 05/13/2013) |
| 05/13/2013 | | 89 | Notice Filed by Adam B. Rome on behalf of Kevin Ameriks, Bridgeview Bank Group, Joshua Grossman (RE: 88 Appellee Designation). (Rome, Adam) (Entered: 05/13/2013) |
| 05/23/2013 | | 90 | Transcript regarding Hearing Held 4/2/2013. Remote electronic access to the excerpt/transcript is restricted until 08/21/2013. The excerpt/transcript may be viewed at the Bankruptcy Court Clerk's Office. For additional information, contact the Court Reporter J Defini Telephone number 312−987−9722. (RE: related document(s) 75 Motion to Reopen Chapter 7 Case). Notice of Intent to Request Redaction Deadline Due By 5/30/2013. Redaction Request Due By 06/13/2013. Redacted Transcript Submission Due By 06/24/2013. Transcript access will be restricted through 08/21/2013. (DeFini, Jackie) (Entered: 05/23/2013) |
| 05/28/2013 | | 91 | Transcript regarding Hearing Held 02/06/2013. Remote electronic access to the excerpt/transcript is restricted until 08/26/2013. The excerpt/transcript may be viewed at the Bankruptcy Court Clerk's Office. For additional information, contact the Court Reporter J Defini Telephone number 312−987−9722. (RE: related document(s) 72 Hearing Motion Continued). Notice of Intent to Request Redaction Deadline Due By 6/4/2013. Redaction Request Due By 06/18/2013. Redacted Transcript Submission Due By 06/28/2013. Transcript access will be restricted through 08/26/2013. (DeFini, Jackie) (Entered: 05/28/2013) |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
|  | Debtor.) | Hon. Timothy A. Barnes |
|  | ) |  |
|  | ) | Date: 10/10/2012 |
|  | ) | Time: 09:30 Room 642 |

## NOTICE OF MOTION

To: See Service List

PLEASE TAKE NOTICE that on **10/10/2012 at 9:30 am.** or as soon thereafter as counsel may be heard, we will appear before United States Bankruptcy Judge Timothy A. Barnes, or any other judge sitting in her stead, in Courtroom 642 of the Dirksen Federal Courthouse, 219 S. Dearborn Street, Chicago, Illinois, on the attached **MOTION FOR SANCTIONS**, at which time and place you may appear as you see fit.

By:   /s/ John F. Cloutier
        Attorney
John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358 Fax: (727) 865-5272

## CERTIFICATE OF SERVICE

I, John F. Cloutier, hereby certify that I caused a copy of the following documents that were filed with the Clerk of the Bankruptcy Court on 9/10/2012:
**MOTION FOR SANCTIONS**
to be served on the parties listed on the attached Service List by the Court's ECF system and/or U.S. Mail, postage prepaid, on9/11/2012.

JOHN F. CLOUTIER

By:   /s/ John F. Cloutier
        Attorney

John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

## SERVICE LIST

**Notice was sent by first class mail to the following parties:**

+Jualynn Kirkel,  6145 North Sheridan Road,  Apt. 30C,  Chicago, IL 60660-6855
+Chicago Title Land Trust Co.,  4240 Paysphere,  Chicago, IL 60674-0001
+Kiewit Western Co. And Reyes Group, LTD.,  C/O LaKoma Law Firm, LLC,
  1200 Jorie Boulevard, Suite 329,  Oak Brook, IL 60523-2283
+Kirkel Jualynn,  6145 North Sheridan Road,  Apt 30C,  Chicago, IL 60660-6855
+Law Office of Roland Schlosser,  203 North Wabash Avenue Suite 503,  Chicago, IL 60601-2410
+Pacific Global Bank,  2323 South Wentworth Avenue,  Chicago, IL 60616-2093
+Sheila Musker,  C/O Parillo, Weiss & O'Halloran,  77 West Wacker Drive, 50th Floor,
  Chicago, IL 60601-1604
+Tri-State Financial,  Box 2520,  Wilkes-Barre, PA 18703-0018


Notice was sent to the following parties through the court's electronic
noticing center.

E-mail/Text: schlosserlaw@gmail.com Nov 24 2011 03:07:47    Roland Schlosser,
Law Office of Roland Schlosser, Suite 503, 203 North Wabash Avenue, Chicago,
IL 60453
EDI: BANKAMER.COM Nov 24 2011 02:33:00    Bank Of America,  Box 15019,
Wilmington, DE 19886-5019
+E-mail/Text: kevin.ameriks@bridgeviewbank.com Nov 24 2011 03:15:44
    Bridgeview Bank Group, 4753 North Broadway Street, Chicago, IL
60640-4986
EDI: CHASE.COM Nov 24 2011 02:33:00 Milwaukee, WI 53201-1319
EDI: CHASE.COM Nov 24 2011 02:33:00 Wilmington, DE 19850-5298
+EDI: CITICORP.COM Nov 24 2011 02:33:00 Sioux Falls, SD 57117-6497
+EDI: CITICORP.COM Nov 24 2011 02:33:00 Sioux Falls, SD 57104-0432
EDI: USBANKARS.COM Nov 24 2011 02:33:00 Cincinnati, OH 45202-392

                                         JOHN F. CLOUTIER

                                By:   /s/ John F. Cloutier
                                        Attorney

John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

ROA 11 B 47270

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
|     Jualynn M. Kirkel | ) | Case No. 11-47270 |
| | Debtor.) | Hon. Timothy A. Barnes |
| | ) | |
| | ) | Date: 10/10/2012 |
| | ) | Time: 09:30 Room 642 |

**MOTION FOR SANCTIONS**

Debtor, Jualynn M. Kirkel, moves the Court for a finding of contempt and for the imposition of sanctions, both compensatory and punitive, against Bridgeview Bank Group, Bridgeview Bank and Trust, their attorney, Joshua Grossman and their attorney Kevin Ameriks, for violation of this Court's discharge order and the discharge injunction of 11 U.S.C. § 524, and in support of the motion states:

1.  On November 22, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

2.  As of the Petition Date, and currently, the Debtor was the owner of the beneficial interest in a trust with Bridgeview Bank Group as the trustee under the trust agreement dated January 13, 1994 and known as Trust Number 94-101.  Part of  the property in the trust is a commercial property located at 5025 North Clark Street, Chicago, IL 60640, herein after, the "**Clark Stree**t" property.

3.  Also on the Petition Date, and currently, Bridgeview Bank Group, also held a second mortgage on the Clark Street property.  The balance at the time the petition was filed was approximately $245,000.00.  Bridgeview Bank Group was listed as a creditor on the Debtor's

1

schedules and Bridgeview Bank Group, was provided with a notice of the commencement of

the Chapter 7 case.

4. On March 7, 2012 the discharge to the Debtor was filed, which is attached as exhibit A.  The

discharge order was sent to Bridgeview Bank Group, its attorney Kevin Americks, and its

attorney Joshua Grossman through the court's CM/ECG electronic mail system on March 7,

2012 as shown on the discharge order.

5. The Bridgeview Bank Group's mortgage and loan was a 20 year mortgage in which the note

was re-written each year and the interest rate adjusted.  Although the mortgage was for 20

years the note was due and payable yearly. See exhibits B, C, and D.

6. The Bridgeview Bank Group's loan against the Clark Street property had an ipso facto clause

in the note that in the event of bankruptcy, the loan could be called due.  Ipso facto clauses are

no longer enforceable under bankruptcy law.

7. Also on the petition date, the Debtor owned a condominium property at 6145 North Sheridan

Road, Unit 30C, Chicago, IL 60660, herein after, the "**Sheridan**" property.  This property had

a value of approximately $170,000.00 at the time the petition was filed but was encumbered

by 3 mortgages.  The first mortgage was to Chase Bank with a balance of $185,847.00, a

second mortgage to Bridgeview Bank Group which had a balance of $91,246.64, and a third

mortgage to Pacific Global Bank with a balance of $99,483.04.

8. The second mortgage to Bridgeview Bank Group on the Sheridan property was totally

unsecured because the balance owed to the first mortgage holder was greater than the value of

the property.

ROA 11 B 47270

9. The first mortgage holder on the Sheridan property has begun foreclosure proceedings which the Debtor is not contesting and which will most likely wipe out the Bridgeview Bank Group second mortgage.

10. The Debtor has continued to make the payments on the Clark Street, property to both the first mortgage holder, Pacific Global Bank as well as the second mortgage holder, Bridgeview Bank Group. Bridgeview Bank Group continues to accept the payments.

11. The Debtor entered into a reaffirmation agreement with the first mortgage holder, Pacific Global Bank on the property at Clark Street property, but not with the second mortgage holder, Bridgeview Bank Group.

12. In early April, 2012, after the chapter 7 discharge, the Debtor was contacted by a bank officer whom she knows and was told she needed to come into the bank to discuss the loan on the Clark Street property. There she met with the loan officer and the vice president of the bank and was told that she would have to reaffirm the discharged debt on the condominium property at 6145 North Sheridan Road, Unit 30C or else the bank would foreclose on the property at 5025 North Clark Street. The debtor informed the bank officer that she had received the discharge and was not going to keep the Sheridan property but would be keeping the Clark Street property and would continue to make her payments as she had always done.

13. The bank officials informed the Debtor that the bank was requiring her to reaffirm the already discharged debt on the Sheridan property or that they would foreclose on on the Clark Street property.

14. The mortgage on the Clark Street property is a 20 year mortgage that began in 2007. The note is year to year and customarily amended each year to extend it another year and to adjust

3

the interest rate to reflect changes in interest rates. Such amendment has been repeatedly done

by the parties.  See exhibit D.

15. On or about April 5, 2012 the Debtor contacted the undersigned, a real estate attorney who

specializes in foreclosure law, regarding the threats that the bank was making to foreclose on

the Clark Street property unless the Debtor reaffirmed the discharged debt on the Sheridan

Road condominium.

16.  Also on or about April 5, 2012 the undersigned contacted the attorney for the bank, Joshua

Grossman, regarding the attempt by the bank to use the threat of foreclosure of a current loan

against the Clark Street property as leverage to force the Debtor to reaffirm a debt that was

already discharged. The undersigned informed Attorney Grossman that he did not believe that

such a threat was proper.  Mr. Grossman stated that it was proper and that he had 2 cases that

supported this method of collecting the discharged debt.  Mr. Grossman stated that the bank

was demanding a reaffirmation of the discharged debt of the condominium on Sheridan in the

amount of 55% of the current balance (approximately $50,000.00), or they would refuse to

make the customary amendment to extend the mortgage note and would foreclose on the Clark

street property on which the loan was current.

17. The chapter 7 case had already concluded, the discharge under section 524 was in place and

the time period for reaffirming debt was expired.  Bridgeview Bank Group and their attorneys

knew of the discharge as evidenced by the certification of service on the discharge order, their

discussion with Ms. Kirkel, and from the undersigned.  See Exhibits E through P.

18.  On April 13, 2012 the attorney for the bank stated in an email, "I won't file my complaint

until next week but I can't guaranty a full week so please talk with Ms. Kirkel soon so we can

determine if there is a settlement that can be reached."  The "complaint" that he referred to

ROA 11 B 47270

was a complaint to foreclose the Clark Street property and the "settlement" he wanted was a partial reaffirmation of the already discharged debt.  The "applicable case law" that he was referring to were 2 cases he felt supported his belief that a post discharge demand to reaffirm a discharged debt could be made and a threat to foreclose on a second property could be used to coerce the debtor into the reaffirmation. See exhibitE.

19. On April 19, 2012, counsel for Bridgeview Bank Group, Joshua Grossman, sent to the undersigned attorney for the Debtor an email that he believed supported his position that the bank could threaten to foreclose on a property if the debtor refused to reaffirm a debt that was previously discharged in a chapter 7 case.  See Exhibit H.

20. The first case that counsel believed supported his right to use the threat of foreclosure to coerce the reaffirmation of a discharged debt was In re Jamo, 283 F.3d 392, 403 (1st Cir. 2002).  However, Attorney Grossman's faith in Jamo as support for his assertion is misplaced. The Jamo case only supports that position that a lender may require the reaffirmation of one loan to the reaffirmation of another loan during negotiations under section 524(c) of the Bankruptcy Code.  Jamo says that a communication with the debtor to inform the debtor that they would be willing to discuss a reaffirmation of a debt is not a per se violation of the section 362 injunction, nor is their requirement of the reaffirmation of one loan in order to reaffirm another.  However, Bridgeview Bank Group and their attorney Mr. Grossman fail to understand that the negotiation may not be coercive, that it must be done prior to the receipt of the discharge, that it must be filed with the court, and other procedural items must be gone through prior to the reaffirmation for the protection of the debtor.  The purpose is to help assure that the agreement is voluntary on the debtor's part rather than coerced and does not put such a crushing weight on his shoulders that it prevents the debtor from making the fresh start

5

that is one of the goals of bankruptcy law.  In re Turner, 156 F.3d 713, 718 (7th Cir. 1998),

Cox v. Zale Delaware, 239 F.3d 910 (2001).  Bridgeview Bank Group is trying to coerce the

reaffirmation after the discharge has been received when the Debtor no longer had the

protection of the court or her bankruptcy attorney,  their demands amount to no less than

extortion an bare no relation to anything that is allowed under In re Jamo.  And Bridgeview

bank did more than make threats when it actually filed a foreclosure action in retaliation

against the debtor.

21. The second case that Bridgeview Bank Group and their attorney Joshua Grossman were

relying on when making their threats was, In re Schmidt, 64 B.R. 226 (Bankr. S.D. Ind. 1986)

and their faith is also misplaced.  In Schmidt, the creditor made only passive efforts to collect

dischargeable unsecured debt when it sent a letter to the debtor outlining its reaffirmation

policy during the bankruptcy proceedings.  The creditor did not repossess its collateral until

after the debtors indicated that they would abandon the collateral and the creditor was merely

stating his policy on reaffirmation in the letter to the debtor.  Bridgeview Bank Group's efforts

were much more than passive and amount to extortion.  Unlike in Schmidt, Bridgeview Bank

Group's efforts came after the discharge was entered rather than during the proceedings and in

accordance with section 524(s).  Unlike in Schmidt, Bridgeview Bank Group's threats and its

filing of the foreclosure action in carrying out the threats was during a time that the debtor was

not under the protection of the bankruptcy proceeding and while represented by counsel.

22.  On April 14, 2012 the undersigned counsel sent an email to the bank's in-house counsel

outlining the previous discussion in order to make sure that there was no misunderstanding as

to what the bank was demanding, a reaffirmation of at least part of the discharged debt on the

Sheridan condominium (the bank asking for 55% or about $52,000.00) or else the bank would foreclose on the Clark Street property which was current on the payments. The undersigned counsel clearly pointed out that such a request did not seem to be in accord with bankruptcy law. It also pointed out that the threats to the Debtor were causing her to become very upset. See Exhibit E.

23. Another important thing to point out that is revealed in the emails is the premise that sound business practice by both parties would result in the bank restructuring the second mortgage from a loan that was due yearly and paid interest only, into one that was amortized over 25 years with a fixed rate of between 3.5% and 5.5%. See Exhibits F through P.

24. On April 26 the undersigned attorney for the debtor sent an email to Mr. Grossman pointing out that his research indicated that the bank's linking the payment of the already discharged debt to the threat of foreclosure was a violation of the Bankruptcy Code. See exhibit I.

25. On April 27, 2012, Mr. Grossman sent the undersigned attorney for Ms. Kirkel an email that stated he continued to believe the threat to foreclose on the Clark Street property. He also stated that his understanding was that the bank would agree to an interest rate on a refinance of the the Clark Street property of 5.5%. (Other discussions were to fully amortize the loan over 25 years.) He went on to state that, "The only question now concerns the HELOC." (The HELOC was the Home Equity Line of Credit that was on the Sheridan property and which had already been discharged in the chapter 7 bankruptcy. See Exhibit J, second email down.

26. On April 28, 2012 an email was sent showing that the parties agreed that a 5.5% interest rate amortized over 25 years was a prudent agreement for both parties. Neither side objected to that statement but the bank was still using the threat of foreclosure as leverage to get the Debtor to pay the discharged debt. See exhibit J

7

27. On April 30, 2012 Mr. Grossman sent the undersigned attorney for the Debtor an email

which stated the following:

"I wish I were bluffing.  The first step is to actually get a settlement wrapped up which means i

actually need an offer from you.  No more "Is the bank interested in ...".  If you are making an

offer based on the terms set forth in your email then I can bring that to the bank's highter ups and

in a day or two I will get a response from them.  Once we have something in place, we can

discuss the other steps."

This email from the bank was in response to the undersigned clearly pointing out what the bank

was demanding, the reaffirmation of at least a portion of the discharged debt on the Sheridan

property or else the bank would foreclose.  The link was clear, the threat was to induce the

Debtor to pay the discharged debtThey clearly pointed out that they were not bluffing on the

foreclosure threat.  It was also pointed out that Bridgeview Bank Group would be willing to take

the chance of losing money on the Clark Street property by initiating the foreclosure just as

leverage to get the reaffirmation of the discharged debt.  It is clear that the impetuous of the

foreclosure is the chance to get the Sheridan loan repaid.  See Exhibit K, second email from top.

28.  On April 30, 2012 the undersigned attorney for the Debtor asked how the Debtor could be in

default on the Clark Street loan when she had made all of her payments and the industry

practice on such commercial loans, as well as the practice between the parties had been to

reissue the note each year.  After all, the mortgage was a 20 year mortgage, only the note

would be rewritten each year to reflect the changes in the market.  Mr. Grossman stated that

Ms. Kirkel went bankrupt and that was a default under the loan (an ipso facto clause) and that

the loan has matured. See exhibit L.

29. Ipso facto clauses are no longer enforceable in bankruptcy cases.

8

30. Industry practice is to rewrite the loan each year and but for the use of the threat of
foreclosure the bank would do so here.

31. The current structure of the Bridgeview Bank loan on the Clark Street property allows the
interest rate to be adjusted yearly and the note to be called due each year.  In light of the
bank's actions in trying to punish the Debtor for discharging the condominium loan by
threatening to foreclose on the Clark Street property, the Debtor is at serious risk of the bank
retaliating against the Clark Street property to punish the Debtor.

32. As is clearly indicated in the emails between the attorneys, the only reason that Bridgeview
Bank has begun foreclosure on the Clark Street property is to force the debtor to pay an
already discharged loan and to punish her for having obtained a discharge.

33. The first mortgage on the Clark Street property is with another bank and is current.  The
second mortgage which is held by Bridgeview Bank Group is also current, but is mostly or
totally unsecured.  Bridgeview Bank Group has threatened to foreclose on the Clark Street
property if the discharged debt on the Sheridan Condominium's loan was not reaffirmed.  If it
did so, Bridgeview bank would end up obtaining a property that was worth much less than
what is currently owed and would be a large loss compared to the continued receipt of the
monthly mortgage payments.  Such a threat shows that Bridgeview Bank Group is willing to
take the gamble of losing a great deal of money in an attempt to get the discharged
condominium debt reaffirmed.  Such threats show that the Debtor remains vulnerable to the
illegal actions of the Bridgeview Bank Group if the debt is allowed to remain structured as it is
where the bank can call the loan due yearly or adjust the interest rate as it chooses.
Bridgeview Bank Group could charge high interest rates as punishment, it could foreclose, or

it could take a large number of other steps to punish the Debtor for legally filing the

bankruptcy.

34. Without a permanent extinguishment of Bridgeview Bank's note and mortgage on the Clark

Street property or the permanent restructuring of the note and mortgage the Debtor will remain

at risk of Bridgeview Bank and their attorneys improper use of the mortgage and note to

punish and extort the Debtor.

35. The Debtor's tenant in the Clark Street property pays $10,000. per month in rent and also a

share of the taxes.  Once the tenant learned that the bank has filed foreclosure it canceled a

check it had already given to the Debtor as rent, has stopped paying its rent totally, and has

stopped paying the property tax obligation.

36. The tenant's reaction to the bank's foreclosure is causing great damage to the Debtor and was

a foreseeable result of the Bank's action.


WHEREFORE, the debtor requests an entry of an order:

1.  Finding Bridgeview Bank Group and its in-house counsel, Joshua Grossman and Kevin

Ameriks in contempt for violation of the discharge order,

2. Awarding damages, both compensatory and punitive, plus all attorney fees and costs incurred

in bringing this action against Bridgeview Banking Group, Kevin Ameriks and Joshua

Grossman for violation of the discharge order and injunction,

3. For injunctive relief forbidding the bank to take any action to continue the foreclosure against

the Clark Street property either as leverage to force the Debtor to reaffirm or otherwise pay the

discharged debt on the Sheridan condominium,

ROA 11 B 47270

4. For an order under section 105 of the bankruptcy code to extinguish the debt or at least part of
   the debt which constitutes a second mortgage on the Clark Street property and with which
   Bridgeview Bank, Joshua Grossman, and Kevin Ameriks used and are using as a weapon
   against the debtor in violation the discharge injunction of Section 524(a).

5. For an order which restructures any debt remaining on the Clark Street property bringing the
   interest rate down to a current market rate of 3.5% and amortizing the debt over 25 years.

JOHN F. CLOUTIER

By:   /s/ John F. Cloutier
          Attorney
John F. Cloutier (6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

ROA 11 B 47270

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

# Exhibit A

Northern District of Illinois

**Case No. 11–47270**

**Chapter 7**

In re: Debtor (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

Jualynn Kirkel
aka Jualynn M. Kirkel, aka Julie
Mae Kirkel
6145 North Sheridan Road
Apt. 30C
Chicago, IL 60660

Social Security / Individual Taxpayer ID No.:
xxx–xx–2906

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge, **IT IS ORDERED:** The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

FOR THE COURT

Dated: <u>March 7, 2012</u>

<u>Kenneth S. Gardner, Clerk</u>
United States Bankruptcy Court

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

ROA 11 B 47270

**B18 (Official Form 18) (12/07) – Cont.**

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor.*[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts that are Not Discharged.

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes (in a case filed on or after October 17, 2005);

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans (in a case filed on or after October 17, 2005).

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

United States Bankruptcy Court
Northern District of Illinois

In re:                                                                  Case No. 11-47270-SPS
Jualynn Kirkel                                                          Chapter 7
          Debtor

**CERTIFICATE OF NOTICE**

District/off: 0752-1          User: dgomez          Page 1 of 2          Date Rcvd: Mar 07, 2012
                             Form ID: b18          Total Noticed: 18

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Mar 09, 2012.
db         +Jualynn Kirkel,   6145 North Sheridan Road,   Apt. 30C,   Chicago, IL 60660-6855
18092246   +Chicago Title Land Trust Co.,   4240 Paysphere,   Chicago, IL 60674-0001
18092249   +Kiewit Western Co. And Reyes Group, LTD.,   C/O LaKoma Law Firm, LLC,
            1200 Jorie Boulevard, Suite 329,   Oak Brook, IL 60523-2283
18092240   +Kirkel Jualynn,   6145 North Sheridan Road,   Apt 30C,   Chicago, IL 60660-6855
18092241   +Law Office of Roland Schlosser,   203 North Wabash Avenue Suite 503,   Chicago, IL 60601-2410
18092250   +Pacific Global Bank,   2323 South Wentworth Avenue,   Chicago, IL 60616-2093
18092251   +Sheila Musker,   C/O Parillo, Weiss & O'Halloran,   77 West Wacker Drive, 50th Floor,
            Chicago, IL 60601-1604
18092252   +Tri-State Financial,   Box 2520,   Wilkes-Barre, PA 18703-0018

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
tr          +EDI: QDMGUTFELD.COM Mar 08 2012 01:28:00      Deborah Michelle Gutfeld,   Perkins Coie LLP,
            131 South Dearborn,   Chicago, IL 60603-5559
18138793    EDI: BECKLEE.COM Mar 08 2012 01:28:00      American Express Bank FSB,   c/o Becket and Lee LLP,
            POB 3001,   Malvern  PA 19355-0701
18092242    EDI: BANKAMER.COM Mar 08 2012 01:28:00      Bank Of America,   Box 15019,
            Wilmington, DE  19886-5019
18109393    +E-mail/Text: kevin.ameriks@bridgeviewbank.com Mar 08 2012 02:45:07      Bridgeview Bank Group,
            4753 N. Broadway,   Chicago, IL 60640-4986
18092243    +E-mail/Text: kevin.ameriks@bridgeviewbank.com Mar 08 2012 02:45:07      Bridgeview Bank Group,
            4753 North Broadway Street,   Chicago, IL 60640-4986
18092244    EDI: CHASE.COM Mar 08 2012 01:28:00      Chase Bank,   11200 West Parkland Avenue,   Box 3139,
            Milwaukee, WI  53201-1319
18092245    EDI: CHASE.COM Mar 08 2012 01:28:00      Chase Bank,   Cardmember Services,   Box 15298,
            Wilmington, DE  19850-5298
18092247    +EDI: CITICORP.COM Mar 08 2012 01:28:00      Citibank/Home Depot,   Box 6497,
            Sioux Falls, SD 57117-6497
18092248    +EDI: CITICORP.COM Mar 08 2012 01:28:00      Citicards CBNA,   701 East 60th Street N,
            Sioux Falls, SD 57104-0432
18092253    EDI: USBANKARS.COM Mar 08 2012 01:28:00      US Bank,   425 Walnut Street,
            Cincinnati, OH  45202-3923
                                                                              TOTAL: 10

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                         TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Mar 09, 2012**                    **Signature:**          *Joseph Speetjens*

```
District/off: 0752-1          User: dgomez          Page 2 of 2          Date Rcvd: Mar 07, 2012
                             Form ID: b18           Total Noticed: 18
```

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on March 7, 2012 at the address(es) listed below:
     David  Richardson    on behalf of Creditor  Pacific Global Bank drichardson@neryrichardson.com
     Deborah Michelle Gutfeld    gutfeldch7@perkinscoie.com,
     dgutfeld@ecf.epiqsystems.com;cdennis@nge.com
     Gloria C  Tsotsos    on behalf of Creditor  JPMorgan Chase Bank, National Association
     nd-three@il.cslegal.com
     Joshua M Grossman    on behalf of Creditor  Bridgeview Bank Group
     joshua.grossman@bridgeviewbank.com
     Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
     Roland  Schlosser    on behalf of Debtor Jualynn Kirkel schlosserlaw@gmail.com
                                                  TOTAL: 6

**PROMISSORY NOTE**

# Exhibit B

| Principal $245,000.00 | Loan Date 05-02-2007 | Maturity 05-01-2008 | Loan No *** | Call / Coll 01E0 / 71 | Account 00000042725 | Officer 35 | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jualynn Mai Kirkel (SSN: 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)
Bridgeview Bank Group as Trustee u/t/a dated
January 13, 1994 a/k/a Trust #94-101
6145 North Sheridan Road, Unit 30C
Chicago, IL 60660

**Lender:** Bridgeview Bank Group
7940 S. Harlem Ave.
Bridgeview, IL 60455

---

**Principal Amount: $245,000.00**            **Initial Rate: 8.250%**            **Date of Note: May 2, 2007**

**PROMISE TO PAY.** Jualynn Mai Kirkel; and Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101 ("Borrower") jointly and severally promise to pay to Bridgeview Bank Group ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Forty-five Thousand & 00/100 Dollars ($245,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 1, 2008. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 2, 2007, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is Lender's Prime Rate (the "Index"). This is the rate Lender charges, or would charge, on 90-day unsecured loans to the most creditworthy corporate customers. This rate may or may not be the lowest rate available from Lender at any given time. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 8.250% per annum.** The interest rate to be applied to the unpaid principal balance during this Note will be at a rate equal to the Index, resulting in an initial rate of 8.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bridgeview Bank Group, ATTN: Loan Operations, 4753 N Broadway Chicago, IL 60640.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **10.000% of the regularly scheduled payment or $250.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 10.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**PROMISSORY NOTE**
(Continued)

Loan No: 533376000-10301

Page 2

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of laws provisions. This Note has been accepted by Lender in the State of Illinois.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**CONFESSION OF JUDGMENT.** Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Junior Mortgage from Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101 to Lender dated May 2, 2007 for property located at 5025 N Clark, Chicago, IL 60640 .

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person currently is authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of his or her authority: **Jualynn Mai Kirkel.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bridgeview Bank Group 4753 N Broadway Chicago, IL 60640.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

ROA 11 B 47270

**PROMISSORY NOTE**
(Continued)

Loan No: 533376000-10301

Page 3

**TRUSTEE'S LIABILITY.** This Note is being executed by Bridgeview Bank Group not personally but as Trustee in the exercise of the power and authority conferred upon and vested in that person or entity as such Trustee, and is payable by Bridgeview Bank Group only out of the assets of the Trust described above or from any collateral for this loan. This limitation, however, shall in no way modify or discharge the personal liability of any other guarantor, co-borrower, or cosigner of this Note.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _Jua Ann Mai Kirkel_____
JuaAnn Mai Kirkel, Individually

BRIDGEVIEW BANK GROUP AS TRUSTEE U/T/A DATED JANUARY 13, 1994 A/K/A TRUST #94-101

BRIDGEVIEW BANK GROUP, not personally but as Trustee under that certain trust agreement dated 01-13-1994 and known as Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101.

By: _John C. Sweisparger_____
Authorized Signer for Bridgeview Bank Group

LASER PRO Lending, Ver. 5.36.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - IL C:\LASERPRO\CFI\LPL\D20.FC TR-7445 PR-9

ROA 11 B 47270

Exhibit C

533376000-10301

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $245,000.00 | 02-05-2011 | 02-05-2012 | *** | 01E0 / 71 | 0000042725 | 35 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Jualynn Mai Kirkel (SSN: 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)
Chicago Title Land Trust Company as Successor Trustee to Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101
6145 North Sheridan Road, Unit 30C
Chicago, IL 60660

**Lender:** Bridgeview Bank Group
7940 S. Harlem Ave.
Bridgeview, IL 60455

**Principal Amount: $245,000.00** **Date of Agreement: February 5, 2011**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** The Promissory Note from Jualynn Mai Kirkel and Bridgeview Bankd Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101 to Lender dated May 2, 2007 in the principal amount of $245,000.00.

**DESCRIPTION OF COLLATERAL.** A Junior Mortgage from Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101 to Lender dated May 2, 2007 for property located at 5025 N Clark, Chicago, IL 60640 .

**DESCRIPTION OF CHANGE IN TERMS.** To extend the maturity from February 5, 2011 to February 5, 2012, with all other terms and conditions remaining the same.

**PROMISE TO PAY. Jualynn Mai Kirkel; and Chicago Title Land Trust Company as Successor Trustee to Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101 ("Borrower") jointly and severally promise to pay to Bridgeview Bank Group ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Forty-five Thousand & 00/100 Dollars ($245,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.000%. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.**

**PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on February 5, 2012. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning March 5, 2011, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.**

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bridgeview Bank Group, ATTN: Loan Operations, 4753 N Broadway Chicago, IL 60640.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **10.000% of the regularly scheduled payment or $250.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased by 10.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 533376000-10301                                                                                   Page 2

of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Illinois.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**CONFESSION OF JUDGMENT.** Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Agreement as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Agreement, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Agreement have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by a Junior Mortgage from Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101 to Lender dated May 2, 2007 for property located at 5025 N Clark, Chicago, IL 60640 .

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Jualynn Mai Kirkel.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bridgeview Bank Group 4753 N Broadway Chicago, IL 60640.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender

Case 4:17-cv-03025 Document 9-1 Filed 05/28/09 Page 32 of 38 PageID #:49 Case 1:17-cv-03025 Document 9-1 Filed 05/28/09 Page 3 of 381 PageID #:49 Exhibit

Page 3 of 3

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 533376000-10301                                                                                    Page 3

may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them.  Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower  (a) make one or more additional secured or unsecured loans or otherwise extend additional credit;  (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness;  (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral;  (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine;  (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  and  (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower.  Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor.  Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Agreement are joint and several.

**TRUSTEE'S LIABILITY.**  This Agreement is being executed by Chicago Title Land Trust Company not personally but as Trustee in the exercise of the power and authority conferred upon and vested in that person or entity as such Trustee, and is payable by Chicago Title Land Trust Company only out of the assets of the Trust described above or from any collateral for this Indebtedness.  This limitation, however, shall in no way modify or discharge the personal liability of any other guarantor, co-borrower, or cosigner of this Agreement.

**PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**CHANGE IN TERMS SIGNERS:**

X _____
Jualyna Mai Kirkel

CHICAGO TITLE LAND TRUST COMPANY AS SUCCESSOR TRUSTEE TO BRIDGEVIEW BANK GROUP AS TRUSTEE U/T/A DATED JANUARY 13, 1994 A/K/A TRUST #94-101

CHICAGO TITLE LAND TRUST COMPANY, not personally but as Trustee under that certain trust agreement dated 01-13-1994 and known as Chicago Title Land Trust Company as Successor Trustee to Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101.

By: _____
Authorized Signer for Chicago Title Land Trust Company

LASER PRO Lending, Ver. 5.55.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2011.  All Rights Reserved.  - IL  S:\APPS\LAS6\HPRO\CFRLPL\D29C.FC  TR-7445  PR-5

ROA 11 B 47270

# Exhibit D

Doc#: 0716917054 Fee: $52.50
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 06/18/2007 11:26 AM Pg: 1 of 15

0716917054

**RECORDATION REQUESTED BY:**
Bridgeview Bank Group
7940 S. Harlem Ave.
Bridgeview, IL 60455

**WHEN RECORDED MAIL TO:**
Bridgeview Bank Group
ATTN: Loan Operations
4753 N Broadway
Chicago, IL 60640

**SEND TAX NOTICES TO:**
Bridgeview Bank Group as
Trustee u/t/a dated January
13, 1994 a/k/a Trust #94-101
4753 N Broadway
Chicago, IL 60640

*op 5/2 file*
*not ok as B*
*7/6/07*
*7/12*
*"/13*

*Lynlynn Kirkel*
*TAP 27672*
*LN# 533376000-10301*

**FOR RECORDER'S USE ONLY**

This Mortgage prepared by:
Bridgeview Bank Group
4753 N Broadway
Chicago, IL 60640

## MORTGAGE

**MAXIMUM LIEN.** At no time shall the principal amount of Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed the Credit Limit of $245,000.00.

**THIS MORTGAGE** dated May 2, 2007, is made and executed between Bridgeview Bank Group, not personally but as Trustee on behalf of Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101, whose address is 4753 N Broadway, Chicago, IL 60640 (referred to below as "Grantor") and Bridgeview Bank Group, whose address is 7940 S. Harlem Ave., Bridgeview, IL 60455 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor not personally but as Trustee under the provisions of a deed or deeds in trust duly recorded and delivered to Grantor pursuant to a Trust Agreement dated January 13, 1994 and known as Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101, mortgages and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Cook County, State of Illinois:

LOT 15 IN WILLIAM M. LEMOYNE'S SUBDIVISION OF LOTS 18, 19, 22, 23 IN A.J. BROWN'S SUBDIVISION OF PART OF THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 5025 N Clark St, Chicago, IL 60640. The Real Property tax identification number is 14-08-310-001-0000.

**REVOLVING LINE OF CREDIT.** This Mortgage secures the Indebtedness including, without limitation, a

Case 4:23-cv-00025 Document

## MORTGAGE
### (Continued)

Loan No: 533376000-10301                                                                                    Page 2

---

revolving line of credit and shall secure not only the amount which Lender has presently advanced to Borrower under the Note, but also any future amounts which Lender may advance to Borrower under the Note within twenty (20) years from the date of this Mortgage to the same extent as if such future advance were made as of the date of the execution of this Mortgage. The revolving line of credit obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Note and Related Documents.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STATUTORY LIENS, EXCEPTING SOLELY TAXES AND ASSESSMENTS LEVIED ON THE REAL PROPERTY, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS. Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall

**MORTGAGE**
**(Continued)**

use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be

# MORTGAGE
(Continued)

Loan No: 533376000-10301                                                                Page 4

exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

'MORTGAGE
(Continued)

Loan No: 533376000-10301                                                                    Page 5

---

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever

ROA 11 B 47270

Case 4:17-cv-03025 Document 109-1 Filed 05/26/09 Page 38 of 38 PageID #:55 Exhibit

|  |  |  |
|---|---|---|
| Loan No: 533376000-10301 | **MORTGAGE**<br>**(Continued)** | Page 6 |

defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal