'**MORTGAGE**
(Continued)

Loan No: 533376000-10301

Page 7

and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Borrower, whether voluntarily or

**MORTGAGE**
**(Continued)**

Loan No: 533376000-10301                                                                              Page 8

---

otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or

Case 4:13-cv-03925 Document 9-11 Filed on 05/28/13 in TXSD Page 4 of 5
Case 1:12-cv-00835 Document 4-2 Filed 05/28/13 Page 32 of 44 PageID#58 hibit
Page 4 of 5

**'MORTGAGE**
**(Continued)**

Loan No: 533376000-10301

Page 9

a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**MORTGAGE**

Loan No: 533376000-10301        (Continued)              Page 10

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MAXIMUM LIEN.** At no time shall the principal amount of indebtedness secured by the Mortgage, not including

**'MORTGAGE**
**(Continued)**

sums advanced to protect the security of the Mortgage exceed $490,000.00.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this

**MORTGAGE**
(Continued)

Loan No: 533376000-10301

Page 12

Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS MORTGAGE, GRANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601(b) OR ANY SIMILAR LAW EXISTING AFTER THE DATE OF THIS MORTGAGE, ANY AND ALL RIGHTS OF REDEMPTION ON GRANTOR'S BEHALF AND ON BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY.

**Grantor's Liability.** This Mortgage is executed by Grantor, not personally but as Trustee as provided above in the exercise of the power and the authority conferred upon and vested in it as such Trustee (and Grantor thereby warrants that it possesses full power and authority to execute this instrument). It is expressly understood and agreed that with the exception of the foregoing warranty, notwithstanding anything to the contrary contained herein, that each and all of the warranties, indemnities, representations, covenants, undertakings, and agreements made in this Mortgage on the part of Grantor, while in form purporting to be the warranties, indemnities, representations, covenants, undertakings, and agreements of Grantor, are nevertheless each and every one of them made and intended not as personal warranties, indemnities, representations, covenants, undertakings, and agreements by Grantor or for the purpose or with the intention of binding Grantor personally, and nothing in this Mortgage or in the Note shall be construed as creating any liability on the part of Grantor personally to pay the Note or any interest that may accrue thereon, or any other Indebtedness under this Mortgage, or to perform any covenant, undertaking, or agreement, either express or implied, contained in this Mortgage, all such liability, if any, being expressly waived by Lender and by every person now or hereafter claiming any right or security under this Mortgage, and that so far as Grantor and its successors personally are concerned, the legal holder or holders of the Note and the owner or owners of any Indebtedness shall look solely to the Property for the payment of the Note and Indebtedness, by the enforcement of the lien created by this Mortgage in the manner provided in the Note and herein or by action to enforce the personal liability of any Guarantor or obligor, other than Grantor, on the Note.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means any and all persons and entities signing the Note.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing

ROA 11 B 47270

## MORTGAGE
**(Continued)**

Loan No: 533376000-10301                                                                    Page 13

---

Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means Bridgeview Bank Group, not personally but as Trustee under that certain Trust Agreement dated January 13, 1994 and known as trust number #94-101. The Grantor is the mortgagor under this Mortgage.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Bridgeview Bank Group, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated May 2, 2007, **in the original principal amount of $245,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is a variable interest rate based upon an index. The index currently is 8.250% per annum. Payments on the Note are to be made in accordance with the following payment schedule: in one payment of all outstanding principal plus all accrued unpaid interest on May 1, 2008. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 2, 2007, with all subsequent interest payments to be due on the same day of each month after that. If the index increases, the payments tied to the index, and therefore the total amount secured hereunder, will increase. Any variable interest rate tied to the index shall be calculated as of, and shall begin on, the commencement date indicated for the applicable payment stream. NOTICE: Under no circumstances shall the interest rate on this Mortgage be more than the maximum rate allowed by applicable law. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan

' MORGAGE
(Continued)

agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Bridgeview Bank Group, whose address is 4753 N Broadway, Chicago, IL 60640, and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

BRIDGEVIEW BANK GROUP AS TRUSTEE U/T/A DATED JANUARY 13, 1994 A/K/A TRUST #94-101

BRIDGEVIEW BANK GROUP, not personally but as Trustee under that certain trust agreement dated 01-13-1994 and known as Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101.

By: _____
    Authorized Signer for Bridgeview Bank Group

**MORTGAGE**
(Continued)

Loan No: 533376000-10301

Page 15

## TRUST ACKNOWLEDGMENT

STATE OF _Illinois_ )
) SS
COUNTY OF _Cook_ )

On this _2nd_ day of _May_ _2007_ before me, the undersigned Notary Public, personally appeared _JOHN C. LIVENSPARGER V. P._ of Bridgeview Bank Group, Trustee of Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101 , and known to me to be an authorized trustee or agent of the trust that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the trust, by authority set forth in the trust documents or, by authority of statute, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the trust.

By _Jeannine D. Johnson_ Residing at _____

Notary Public in and for the State of _Illinois_

My commission expires _4/13/09_

> "OFFICIAL SEAL"
> JEANNINE D. JOHNSON
> NOTARY PUBLIC STATE OF ILLINOIS
> My Commission Expires 04/13/2009

ROA 11 B 47270

# Exhibit E

From:  Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>
Subject:  **Kirkel**
Date:  April 13, 2012 4:12:45 PM CDT
To:  "'johncloutierlaw@aol.com'" <johncloutierlaw@aol.com>

John,

I just left a voicemail for you but wanted to email you as well.  First, I want to be able to get you that list of OREO property and talk about timelines on that front.  Second, I received your message asking for another week.  I wont file my complaint until next week but I can't guaranty a full week so please talk with Ms. Kirkel soon so we can determine if there is a settlement that can be reached.  Lastly,  I have to go through all of my different research folders to find the applicable case law but I will get that to you early next week.

Thanks,

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

This email and attachments are confidential and solely for the use of the intended recipient, and may contain information that is subject to copyright or constitutes a trade secret.  If you are not the named addressee you should reply as such and not disseminate or copy this e-mail. Nothing in this e-mail shall be deemed a waiver or modification of any of the Bank's or its affiliate's rights under any loan documents nor shall be deemed an agreement to forbear. This email does not contain tax or investment advice.

ROA 11 B 47270

Case: 1:23-cv-03035 Document #: 1-41 Filed: 05/26/09 Page 11 of 44 PageID #:86
Case: 1:23-cv-03035 Document #: 1-41 Filed: 05/26/09 Page 12 of 441 PageID #:86
Page 2 of 16

# Exhibit F



From: JohnCloutierLaw <johncloutierlaw@aol.com>
Subject: **Re: Kirkel**
Date: April 14, 2012 1:01:02 AM CDT
To: Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>

Thanks Josh,

You said that if Ms. Kirkel will not agree to reaffirm the condo loan that was discharged, that the bank would foreclose on her property that the bank holds the second mortgage on. You said that the bank wanted her to reaffirm about 55% of the loan. I think she owed about $92,000. so 55% would be $50,600.00. That sounds rather high to me, especially considering she is just coming out of bankruptcy. In the past I would not have much sympathy but this is the worst real estate market in 80 years. Much of the property I own is down to the value that I purchased it for in the mid to early 80s.

As I told you during our first conversation, I don't have much experience with bankruptcy law, but for the bank to demand a reaffirmation of a discharged debt in order not to foreclose on a different property that she has continued to make the payments on does not fit into my understanding of bankruptcy law. Therefore, I am anxious to see the case law you said you have.

I would think that the standard would be what would be commercially reasonable. And I don't think it is proper for the bank to link the two transactions together like they have. I have seen her property and do not believe it could be sold at a foreclosure sale for enough to cover the first mortgage. That would mean your bank's loan would be wiped out. I would think that in this environment where the value of the property is less than what is owed on the first and the second loan that the bank would like to work with the owner, who has been making the payments, until the market recovers and she could sell the property and payoff your client in full. I think the bank will come out further ahead if it is commercially reasonable rather than trying to use the threat of the foreclosure to force her to reaffirm a discharged debt.

Also, you did not say how you expect her to pay the extra $50,600.00? Would that be rolled into the refinanced loan? I do not know for sure but I assume that she does not have much cash at this point after her bankruptcy. What would be the lowest amount the bank would take on a reaffirmation in order to switch to a commercially reasonable standard on the loan renewal? I am thinking 10% would be more just and I think that there would need to be some reassurance that the bank will not use their anger over the condo loan being discharged to force further demands in the future.

I know that it has been common practice to pay interest only on such loans, but being a conservative person, lets look at an amortized loan. I believe the current balance is about $245,000.00. If we were to add 10% of the old loan we would have a principal balance of $254,200.00. At 4.5% over 20 years we would have payments of just under $1500.00 per month. The first monthly payment would be $816.67 in interest and $683.33 in principal. Thus, both parties would become more secure each month in their investment. Let me know if such an arrangement would be acceptable with the bank and I can pass it by Ms Kirklel.

Ms. Kirkle has relayed that, the demand of the bank for her to reaffirm the condo loan or the bank would foreclose on her other property, has gotten her very upset and she has been having trouble sleeping and would like to get this settled.

My interest in the REO property is an effort to find some way to help each other. Her friends deal in foreclosures and maybe they would be willing to help her out if there was something they could do with the REOs. I do not know if it will be helpful but I am always looking for ways to help everyone.

Thanks,

John Cloutier


On Apr 13, 2012, at 4:12 PM, Joshua Grossman wrote:

> John,
>
> I just left a voicemail for you but wanted to email you as well. First, I want to be able to get you that list of OREO property and talk about timelines on that front. Second, I received your message asking for another week. I wont file my complaint until next week but I can't guaranty a full week so please talk with Ms. Kirkel soon so we can determine if there is a settlement that can be reached. Lastly, I have to go through all of my different research folders to find the applicable case law but I will get that to you early next week.
>
> Thanks,
>
> Joshua Grossman
> In-House Counsel
> Bridgeview Bank Group
> 4753 N. Broadway
> Chicago, IL 60640
> Phone: 773-989-5774
> Fax: 773-989-2961

# Exhibit G

On Apr 17, 2012, at 9:54 AM, Joshua Grossman wrote:


John,

What time will you be free for a short chat?  How does early afternoon sound?  Say 1pm?

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

---

**From:** JohnCloutierLaw [mailto:johncloutierlaw@aol.com]
**Sent:** Monday, April 16, 2012 10:37 AM
**To:** Joshua Grossman
**Subject:** Re: Kirkel

I'm tied up today, but should be available most of tomorrow.


On Apr 16, 2012, at 8:56 AM, Joshua Grossman wrote:



John,

Can we setup a time to talk this afternoon?

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

---

**From:** JohnCloutierLaw [mailto:johncloutierlaw@aol.com]
**Sent:** Saturday, April 14, 2012 1:01 AM
**To:** Joshua Grossman
**Subject:** Re: Kirkel

Thanks Josh,

You said that if Ms. Kirkel will not agree to reaffirm the condo loan that was discharged, that the bank would foreclose on her property that the bank holds the second mortgage on.  You said that the bank wanted her to reaffirm about 55% of the loan.  I think she owed about $92,000. so 55% would be $50,600.00.  That sounds rather high to me, especially considering she is just coming out of bankruptcy.  In the past I would not have much sympathy but this is the worst real estate market in 80 years.  Much of the property I own is down to the value that I purchased it for in the mid to early 80s.

As I told you during our first conversation, I don't have much experience with bankruptcy law, but for the bank to demand a reaffirmation of a discharged debt in order not to foreclose on a different property that she has continued to make the payments on does not fit into my understanding of bankruptcy law.   Therefore, I am anxious to see the case law you said you have.

# Exhibit H

From: Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>
Subject: **RE: Kirkel**
Date: April 19, 2012 1:02:49 PM CDT
To: 'JohnCloutierLaw' <johncloutierlaw@aol.com>
▶ 1 Attachment, 1.2 MB

John,

Here is the case law that I mentioned (2 cases in one document). To save you some time, basically the issue is always whether the bank is violating the bankruptcy stay when they tell the debtor that they will not reaffirm one loan without the debtor reaffirming both. The case law shows that such action by the bank is not a violation of the stay. The court seems to favor the saying that a reaffirmation is not a right, it's a privilege.

I have told the bank that we can expect some sort of offer from you tomorrow when we speak.

In addition, our REO website is http://www.bbgreo.com/. If there is anything that appeals to your clients, please let me know and we can have them meet with the right people.

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

---

**From:** JohnCloutierLaw [mailto:johncloutierlaw@aol.com]
**Sent:** Tuesday, April 17, 2012 1:16 PM
**To:** Joshua Grossman
**Subject:** Re: Kirkel

Also, I guess I should check a basic assumption in all of this. Please send me a copy of the note and mortgage showing the note has matured.

Thanks,

John

On Apr 17, 2012, at 12:50 PM, Joshua Grossman wrote:

Sounds good, I'll call you in 10.

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

---

**From:** JohnCloutierLaw [mailto:johncloutierlaw@aol.com]
**Sent:** Tuesday, April 17, 2012 12:10 PM
**To:** Joshua Grossman
**Subject:** Re: Kirkel

That should work.

# Exhibit I



**From:** John Cloutier <Johncloutierlaw@aol.com>
**Subject:** **Re: Note/mortgage**
**Date:** April 26, 2012 5:05:27 PM CDT
**To:** Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>

Hi Josh,

I have reviewed the case law you sent me and must respectfully disagree with your interpretation as to whether the linking of the existing loan to the discharged loan may be made. I also disagree with any interpretation that the existing loan is due. But at this point, rather than being confrontational I am still exploring ways to make everyone happy. Considering the terrible state of the real estate market I think it is a wise tactic. Ms. Kirkel indicated that the bank had made some type of offer with an interest rate in the 3.5% range. I am checking with her bankruptcy attorney to see what offers were made.

John Cloutier
On Apr 24, 2012, at 1:52 PM, Joshua Grossman wrote:

> Here is the note, mortgage and the most recent change in terms agreement. These are all for the commercial property. If you want the mortgage and promissory note for the residential house, just let me kno.
>
> Please give me a call after you become free this afternoon.
>
> Joshua Grossman
> In-House Counsel
> Bridgeview Bank Group
> 4753 N. Broadway
> Chicago, IL 60640
> Phone: 773-989-5774
> Fax: 773-989-2961

> **From:** John Cloutier [mailto:johncloutierlaw@aol.com]
> **Sent:** Tuesday, April 24, 2012 1:29 PM
> **To:** Joshua Grossman
> **Subject:** Re: Note/mortgage
>
> I'm pretty tied up til about 4:30.
>
>
> On Apr 24, 2012, at 11:40 AM, Joshua Grossman wrote:
>
>
> John,
>
> Do you have time to speak today?
>
> Joshua Grossman
> In-House Counsel
> Bridgeview Bank Group
> 4753 N. Broadway
> Chicago, IL 60640
> Phone: 773-989-5774
> Fax: 773-989-2961

> **From:** johncloutierlaw@aol.com [mailto:johncloutierlaw@aol.com]
> **Sent:** Sunday, April 22, 2012 10:15 PM
> **To:** Joshua Grossman
> **Subject:** Note/mortgage
>
> I spent much of the weekend looking over the stuff you sent and doing followup research. Please send me a copy of the mortgage and note which I should have asked for on the first day. I would like to get this finished in the next couple of days.
>
> Thanks,

John Cloutier

The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the agent or employee responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this e-mail in error, please notify us by telephone or return e-mail immediately Thank you.

This email and attachments are confidential and solely for the use of the intended recipient, and may contain information that is subject to copyright or constitutes a trade secret.  If you are not the named addressee you should reply as such and not disseminate or copy this e-mail. Nothing in this e-mail shall be deemed a waiver or modification of any of the Bank's or its affiliate's rights under any loan documents nor shall be deemed an agreement to forbear. This email does not contain tax or investment advice.

This email and attachments are confidential and solely for the use of the intended recipient, and may contain information that is subject to copyright or constitutes a trade secret.  If you are not the named addressee you should reply as such and not disseminate or copy this e-mail. Nothing in this e-mail shall be deemed a waiver or modification of any of the Bank's or its affiliate's rights under any loan documents nor shall be deemed an agreement to forbear. This email does not contain tax or investment advice.

<Most recent change in terms agreement.pdf><Promissory Note.pdf><Commercial Mortgage.pdf>

# Exhibit J



From: John Cloutier <Johncloutierlaw@aol.com>
Subject: **Re: Note/mortgage**
Date: April 28, 2012 1:46:34 AM CDT
To: Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>

Hi Josh,

Sorry I have been tied up the last few days and monday is not going to be any better. I just got to my hotel.

I think that we agree that it is financially prudent for both parties to come to an agreement on the 5025 Clark Street loan to convert the note to a 5.5% loan fully amortized over 25 years, considering the real estate market.

Our disagreement is over any reaffirmation of the discharged HELOC on the condo. The bank's position is that if Ms. Kirkel will not agree to reaffirm some percentage (you suggested 55%) of the discharged debt the bank will call the mortgage on the Clark property due and will foreclose. In fact you have indicated that it is ready to file. I have pointed out that with the first mortgage being held by Pacific Global Bank that if you do foreclose then your bank may end up with nothing by the time the foreclosure is done if Ms. Kirkel fights the foreclosure, stops paying Pacific Global, and they too foreclose. You indicated that Bridgeview Bank would be willing to do this in order to try and recoup some of the HELOC money.

I have advised Ms Kirkel that Bridgeview is probably bluffing and will not foreclose on the Clark Street property but is only using it as leverage to recover its loss on the HELOC of the condo. But she is still worried about losing the Clark Street property and wants to make sure she does not lose it. She says she has made all the payments that are due under the loan on the Clark Street property.

Suppose she enters into a reaffirmation agreement for 20% of the discharged debt. What would the procedure be and do you have papers prepared?

Thanks,

John Cloutier

On Apr 27, 2012, at 8:48 AM, Joshua Grossman wrote:

> John,
>
> Obviously we have a difference of opinion on the law in this sector. No such offer has been made to Ms. Kirkel. I will have to confirm this, but in terms of the interest rate, my understanding was we would agree to a 5.5% interest rate. The only question now concerns the HELOC.
>
> Joshua Grossman
> In-House Counsel
> Bridgeview Bank Group
> 4753 N. Broadway
> Chicago, IL 60640
> Phone: 773-989-5774
> Fax: 773-989-2961

> From: John Cloutier [mailto:Johncloutierlaw@aol.com]
> Sent: Thursday, April 26, 2012 5:05 PM
> To: Joshua Grossman
> Subject: Re: Note/mortgage
>
> Hi Josh,
>
> I have reviewed the case law you sent me and must respectfully disagree with your interpretation as to whether the linking of the existing loan to the discharged loan may be made. I also disagree with any interpretation that the existing loan is due. But at this point, rather than being confrontational I am still exploring ways to make everyone happy. Considering the terrible state of the real estate market I think it is a wise tactic. Ms. Kirkel indicated that the bank had made some type of offer with an interest rate in the 3.5% range. I am checking with her bankruptcy attorney to see what offers were made.
>
> John Cloutier
> On Apr 24, 2012, at 1:52 PM, Joshua Grossman wrote:
>
> > Here is the note, mortgage and the most recent change in terms agreement. These are all for the commercial property. If you want the

# Exhibit K



| | |
|---|---|
| **From:** | John Cloutier <Johncloutierlaw@aol.com> |
| **Subject:** | **Re: Note/mortgage** |
| **Date:** | April 30, 2012 11:02:08 AM CDT |
| **To:** | Joshua Grossman <Joshua.Grossman@bridgeviewbank.com> |

The mortgage says the bank is required to continue the line of credit on the commercial building as long as she keeps up the payments, insurance, etc. The industry standard and practice between the parties has been to reissue the note each year. What evidence or argument do you have that that loan is due or can be recalled?

On Apr 30, 2012, at 8:30 AM, Joshua Grossman wrote:

John,

I wish I were bluffing. The first step is to actually get a settlement wrapped up, which means I actually need an offer from you. No more "Is the bank interested in…". If you are making an offer based on the terms set forth in your email then I can bring that to the bank's higher-ups and in a day or two I will get a response from them. Once we have something in place, we can discuss the other steps.

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

**From:** John Cloutier [mailto:Johncloutierlaw@aol.com]
**Sent:** Saturday, April 28, 2012 1:47 AM
**To:** Joshua Grossman
**Subject:** Re: Note/mortgage

Hi Josh,

Sorry I have been tied up the last few days and monday is not going to be any better. I just got to my hotel.

I think that we agree that it is financially prudent for both parties to come to an agreement on the 5025 Clark Street loan to convert the note to a 5.5% loan fully amortized over 25 years, considering the real estate market.

Our disagreement is over any reaffirmation of the discharged HELOC on the condo. The bank's position is that if Ms. Kirkel will not agree to reaffirm some percentage (you suggested 55%) of the discharged debt the bank will call the mortgage on the Clark property due and will foreclose. In fact you have indicated that it is ready to file. I have pointed out that with the first mortgage being held by Pacific Global Bank that if you do foreclose then your bank may end up with nothing by the time the foreclosure is done if Ms. Kirkel fights the foreclosure, stops paying Pacific Global, and they too foreclose. You indicated that Bridgeview Bank would be willing to do this in order to try and recoup some of the HELOC money.

I have advised Ms Kirkel that Bridgeview is probably bluffing and will not foreclose on the Clark Street property but is only using it as leverage to recover its loss on the HELOC of the condo. But she is still worried about losing the Clark Street property and wants to make sure she does not lose it. She says she has made all the payments that are due under the loan on the Clark Street property.

Suppose she enters into a reaffirmation agreement for 20% of the discharged debt. What would the procedure be and do you have papers prepared?

Thanks,

John Cloutier

Case 1:17-cv-03025 Document 9-1 Filed 05/28/19 Page 12 of 44 PageID #:73
Case 4:23-cv-00025 Document 4 Filed 09/14/22 Page 18 of 44 PageID #: Exhibit
Page 9 of 16

On Apr 27, 2012, at 8:48 AM, Joshua Grossman wrote:

John,

Obviously we have a difference of opinion on the law in this sector.  No such offer has been made to Ms. Kirkel.  I will have to confirm this, but in terms of the interest rate, my understanding was we would agree to a 5.5% interest rate.  The only question now concerns the HELOC.

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

---

**From:** John Cloutier [mailto:Johncloutierlaw@aol.com]
**Sent:** Thursday, April 26, 2012 5:05 PM
**To:** Joshua Grossman
**Subject:** Re: Note/mortgage

Hi Josh,

I have reviewed the case law you sent me and must respectfully disagree with your interpretation as to whether the linking of the existing loan to the discharged loan may be made.  I also disagree with any interpretation that the existing loan is due.  But at this point, rather than being confrontational I am still exploring ways to make everyone happy.  Considering  the terrible state of the real estate market I think it is a wise tactic.  Ms. Kirkel indicated that the bank had made some type of offer with an interest rate in the 3.5% range.  I am checking with her bankruptcy attorney to see what offers were made.

John Cloutier
On Apr 24, 2012, at 1:52 PM, Joshua Grossman wrote:


Here is the note, mortgage and the most recent change in terms agreement.  These are all for the commercial property.  If you want the mortgage and promissory note for the residential house, just let me kno.

Please give me a call after you become free this afternoon.

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

---

**From:** John Cloutier [mailto:johncloutierlaw@aol.com]
**Sent:** Tuesday, April 24, 2012 1:29 PM
**To:** Joshua Grossman
**Subject:** Re: Note/mortgage

I'm pretty tied up til about 4:30.


On Apr 24, 2012, at 11:40 AM, Joshua Grossman wrote:

This email and attachments are confidential and solely for the use of the intended recipient, and may contain information that is subject to copyright or constitutes a trade secret. If you are not the named addressee you should reply as such and not disseminate or copy this e-mail. Nothing in this e-mail shall be deemed a waiver or modification of any of the Bank's or its affiliate's rights under any loan documents nor shall be deemed an agreement to forbear. This email does not contain tax or investment advice.

Case 4:23-cv-00025 Document 9-1 Filed 05/28/19 Page 20 of 44 PageID #75
Case 1:17-cv-08025 Document 9-1 Filed 05/26/09 Page 11 of 16 Exhibit
Page 11 of 16

# Exhibit L



From: John Cloutier <Johncloutierlaw@aol.com>
Subject: **Re: Note/mortgage**
Date: April 30, 2012 11:02:08 AM CDT
To: Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>

The mortgage says the bank is required to continue the line of credit on the commercial building as long as she keeps up the payments, insurance, etc. The industry standard and practice between the parties has been to reissue the note each year. What evidence or argument do you have that that loan is due or can be recalled?

On Apr 30, 2012, at 8:30 AM, Joshua Grossman wrote:

John,

I wish I were bluffing. The first step is to actually get a settlement wrapped up, which means I actually need an offer from you. No more "Is the bank interested in…". If you are making an offer based on the terms set forth in your email then I can bring that to the bank's higher-ups and in a day or two I will get a response from them. Once we have something in place, we can discuss the other steps.

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

From: John Cloutier [mailto:Johncloutierlaw@aol.com]
Sent: Saturday, April 28, 2012 1:47 AM
To: Joshua Grossman
Subject: Re: Note/mortgage

Hi Josh,

Sorry I have been tied up the last few days and monday is not going to be any better. I just got to my hotel.

I think that we agree that it is financially prudent for both parties to come to an agreement on the 5025 Clark Street loan to convert the note to a 5.5% loan fully amortized over 25 years, considering the real estate market.

Our disagreement is over any reaffirmation of the discharged HELOC on the condo. The bank's position is that if Ms. Kirkel will not agree to reaffirm some percentage (you suggested 55%) of the discharged debt the bank will call the mortgage on the Clark property due and will foreclose. In fact you have indicated that it is ready to file. I have pointed out that with the first mortgage being held by Pacific Global Bank that if you do foreclose then your bank may end up with nothing by the time the foreclosure is done if Ms. Kirkel fights the foreclosure, stops paying Pacific Global, and they too foreclose. You indicated that Bridgeview Bank would be willing to do this in order to try and recoup some of the HELOC money.

I have advised Ms Kirkel that Bridgeview is probably bluffing and will not foreclose on the Clark Street property but is only using it as leverage to recover its loss on the HELOC of the condo. But she is still worried about losing the Clark Street property and wants to make sure she does not lose it. She says she has made all the payments that are due under the loan on the Clark Street property.

Suppose she enters into a reaffirmation agreement for 20% of the discharged debt. What would the procedure be and do you have papers prepared?

Thanks,

John Cloutier

# Exhibit M

From: Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>
Subject: **RE: Note/mortgage**
Date: April 30, 2012 1:16:46 PM CDT
To: 'John Cloutier' <Johncloutierlaw@aol.com>

**(This message is for settlement purposes only and is inadmissible in Court)**

John,

Your client went bankrupt, which is a default under the loan, and the promissory note has further matured. If you want to keep arguing about each of our client's rights, please let me know and I will pass the message on to my client that your client does not wish to settle the dispute. If you do wish to settle the dispute, please get me an offer. I have given you opportunity after opportunity to send me an actual offer and so far I have yet to receive one.

My client has no more patience in this matter. You have until Wednesday at 5:00pm to make my client an offer. If you do not make an offer by that time then I will have to assume that no offer is coming and I will file my foreclosure on Thursday morning.

Thank you,


Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

**From:** John Cloutier [mailto:Johncloutierlaw@aol.com]
**Sent:** Monday, April 30, 2012 11:02 AM
**To:** Joshua Grossman
**Subject:** Re: Note/mortgage

The mortgage says the bank is required to continue the line of credit on the commericial building as long as she keeps up the payments, insurance, etc. The industry standard and practice between the parties has been to reissue the note each year. What evidence or argument do you have that that loan is due or can be recalled?


On Apr 30, 2012, at 8:30 AM, Joshua Grossman wrote:


John,

I wish I were bluffing. The first step is to actually get a settlement wrapped up, which means I actually need an offer from you. No more "Is the bank interested in…". If you are making an offer based on the terms set forth in your email then I can bring that to the bank's higher-ups and in a day or two I will get a response from them. Once we have something in place, we can discuss the other steps.

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

**From:** John Cloutier [mailto:Johncloutierlaw@aol.com]
**Sent:** Saturday, April 28, 2012 1:47 AM
**To:** Joshua Grossman
**Subject:** Re: Note/mortgage

# Exhibit N

From: Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>
Subject: **RE: Note/mortgage**
Date: May 2, 2012 4:51:44 PM CDT
To: 'John Cloutier' <Johncloutierlaw@aol.com>

John,

Based on your lack of a response to my last message I am under the impression that you are not willing to settle our dispute.  Will you accept service on behalf of your client?

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

---

**From:** Joshua Grossman
**Sent:** Monday, April 30, 2012 1:17 PM
**To:** 'John Cloutier'
**Subject:** RE: Note/mortgage

**(This message is for settlement purposes only and is inadmissible in Court)**

John,

Your client went bankrupt, which is a default under the loan, and the promissory note has further matured.  If you want to keep arguing about each of our client's rights, please let me know and I will pass the message on to my client that your client does not wish to settle the dispute.  If you do wish to settle the dispute, please get me an offer.  I have given you opportunity after opportunity to send me an actual offer and so far I have yet to receive one.

My client has no more patience in this matter.  You have until Wednesday at 5:00pm to make my client an offer.  If you do not make an offer by that time then I will have to assume that no offer is coming and I will file my foreclosure on Thursday morning.

Thank you,


Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

---

**From:** John Cloutier [mailto:Johncloutierlaw@aol.com]
**Sent:** Monday, April 30, 2012 11:02 AM
**To:** Joshua Grossman
**Subject:** Re: Note/mortgage

The mortgage says the bank is required to continue the line of credit on the commericial building as long as she keeps up the payments, insurance, etc.  The industry standard and practice between the parties has been to reissue the note each year.  What evidence or argument do you have that that loan is due or can be recalled?


On Apr 30, 2012, at 8:30 AM, Joshua Grossman wrote:


John,

# Exhibit O



From: John Cloutier <Johncloutierlaw@aol.com>
Subject: **Re: Note/mortgage**
Date: May 2, 2012 5:01:07 PM CDT
To: Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>
Cc: Juliemai1@yahoo.com

Hi Josh,

Thank you for your patience in giving me time to adequately research this subject, which I have little experience with.

Unfortunately, I must continue to respectfully disagree with your reading and analysis of the existing case law and statutes. I continue to believe that the bank's actions are in violation of the discharge stay and are an improper attempt to collect a discharged debt through the use of harassment, fear, threats, and blackmail (duress). I also feel there may be an effort, possibly unconsciously, to put duress on her as an unsophisticated foreigner.

What we are prepared to offer the bank is a reasonable, sound, mature, and intelligent way to solve their problem. At this point they own a mortgage on a commercial property, the value of which is who knows what in this market. A foreclosure would take 3 years if you were to go against me and win, which you would not. And in the end the bank would have a commercial property with a great deal of money owed to a senior lien holder.

Ms Kerkel had faithfully made the payments on the property for the past 5 years and it is in the bank's interest to continue receiving the payments from her.

Therefore, we are prepared to enter into a modification of the loan, as we have discussed, 5.5% amortized over 25 years. We can start this right away.

There will be no reaffirmation of any discharged debt.

I hope that the bank chooses to take this common sense road. If they were my client I would definately urge them to rely on my 30 years of real estate law experience and accept this offer.

Sincerely,


Attorney John F. Cloutier
5923 S. Kolmar
Chicago, IL 60629
JohnCloutierLaw@aol.com
847-275-6358




On Apr 30, 2012, at 1:16 PM, Joshua Grossman wrote:

> **(This message is for settlement purposes only and is inadmissible in Court)**
>
> John,
>
> Your client went bankrupt, which is a default under the loan, and the promissory note has further matured. If you want to keep arguing about each of our client's rights, please let me know and I will pass the message on to my client that your client does not wish to settle the dispute. If you do wish to settle the dispute, please get me an offer. I have given you opportunity after opportunity to send me an actual offer and so far I have yet to receive one.
>
> My client has no more patience in this matter. You have until Wednesday at 5:00pm to make my client an offer. If you do not make an offer by that time then I will have to assume that no offer is coming and I will file my foreclosure on Thursday morning.
>
> Thank you,
>
>
> Joshua Grossman
> In-House Counsel
> Bridgeview Bank Group
> 4753 N. Broadway
> Chicago, IL 60640
> Phone: 773-989-5774
> Fax: 773-989-2961

# Exhibit P

From: Joshua Grossman <Joshua.Grossman@bridgeviewbank.com>
Subject: **RE: Note/mortgage**
Date: May 15, 2012 1:49:08 PM CDT
To: 'John Cloutier' <JohnCloutierLaw@aol.com>

John,

Unfortunately, the Bank has decided to move forward with the foreclosure.  Are you willing to accept service on behalf of your client?

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 708-728-7572

---

**From:** John Cloutier [mailto:JohnCloutierLaw@aol.com]
**Sent:** Wednesday, May 02, 2012 9:47 PM
**To:** Joshua Grossman
**Subject:** Re: Note/mortgage

Thanks, I look forward to their response and have the feeling they will agree to this considering this horrible real estate market.

You weren't in Judge Reyes court today were you?  There was a lawyer there looking for the Bridgeview bank attorney today.

On May 2, 2012, at 5:16 PM, Joshua Grossman wrote:

John,

Thank you for your response.  I can assure you that our actions have nothing to do with where your client was born, nor do we ever use harassment, fear, threats, blackmail or duress in an attempt to settle a dispute.

I will provide the Bank with your communication and let you know what their final decision is as soon as I know.

Joshua Grossman
In-House Counsel
Bridgeview Bank Group
4753 N. Broadway
Chicago, IL 60640
Phone: 773-989-5774
Fax: 773-989-2961

---

**From:** John Cloutier [mailto:Johncloutierlaw@aol.com]
**Sent:** Wednesday, May 02, 2012 5:01 PM
**To:** Joshua Grossman
**Cc:** Juliemai1@yahoo.com
**Subject:** Re: Note/mortgage

Hi Josh,

Thank you for your patience in giving me time to adequately research this subject, which I have little experience with.

Unfortunately, I must continue to respectfully disagree with your reading and analysis of the existing case law and statutes.  I continue to believe that the bank's actions are in violation of the discharge stay and are an improper attempt to collect a discharged debt through the use of harassment, fear, threats, and blackmail (duress).  I also feel there may be an effort, possibly

unconsciously, to put duress on her as an unsophisticated foreigner.

What we are prepared to offer the bank is a reasonable, sound, mature, and intelligent way to solve their problem. At this point they own a mortgage on a commercial property, the value of which is who knows what in this market. A foreclosure would take 3 years if you were to go against me and win, which you would not. And in the end the bank would have a commercial property with a great deal of money owed to a senior lien holder.

Ms Kerkel had faithfully made the payments on the property for the past 5 years and it is in the bank's interest to continue receiving the payments from her.

Therefore, we are prepared to enter into a modification of the loan, as we have discussed, 5.5% amortized over 25 years. We can start this right away.

There will be no reaffirmation of any discharged debt.

I hope that the bank chooses to take this common sense road. If they were my client I would definately urge them to rely on my 30 years of real estate law experience and accept this offer.

Sincerely,


Attorney John F. Cloutier
5923 S. Kolmar
Chicago, IL 60629
JohnCloutierLaw@aol.com
847-275-6358




On Apr 30, 2012, at 1:16 PM, Joshua Grossman wrote:


**(This message is for settlement purposes only and is inadmissible in Court)**

John,

Your client went bankrupt, which is a default under the loan, and the promissory note has further matured. If you want to keep arguing about each of our client's rights, please let me know and I will pass the message on to my client that your client does not wish to settle the dispute. If you do wish to settle the dispute, please get me an offer. I have given you opportunity after opportunity to send me an actual offer and so far I have yet to receive one.

My client has no more patience in this matter. You have until Wednesday at 5:00pm to make my client an offer. If you do not make an offer by that time then I will have to assume that no offer is coming and I will file my foreclosure on Thursday morning.

Thank you,


Joshua Grossman
In-House Counsel

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
|  | Debtor.) | Hon. Timothy A. Barnes |
|  | ) |  |
|  | ) | Date: 10/10/2012 |
|  | ) | Time: 09:30 Room 642 |

### ORDER

THIS MATTER COMING TO BE HEARD upon the Debtor's Motion for Sanctions against Bridgeview Bank, their attorney Joshua Grossman, and their attorney Kevin Ameriks; due and proper notice of the motion having been given to all relevant parties; the Court finds:

1. The Court has jurisdiction over the subject matter of this proceeding and the parties thereto;

2. That Bridgeview Bank, its attorney Joshua Grossman, and its attorney Kevin Ameriks are in contempt for violating the discharge stay of section 524(a) of the bankruptcy code;

3. That Bridgeview Bank has knowingly and purposefully used its position as the holder of a note and mortgage on the Debtor's property at 5025 North Clark Street, Chicago, IL 60640 in an attempt to collect on another already discharged debt;

4. That Bridgeview Bank may again use the note and mortgage on the property at 5025 North Clark Street, Chicago, IL 60640 in an improper because of the way it is structured.

5. The actions of Bridgeview Bank and its attorneys have caused financial damages to the Debtor by causing her to hire an attorney to fight the improper actions of their threats, legal fees in fighting the foreclosure, legal fees in seeking to collect her rents after her tenant learned of the foreclosure action.

6. The actions of Bridgeview Bank and its attorneys have caused emotional damages which are

tied to the financial damages.

IT IS HEREBY ORDERED THAT:

A.  The Debtor shall be granted her attorneys fees dealing with this matter, and for

bringing this and related motions, including the fighting of the foreclosure

action.

B. The Debtor's request that the note and mortgage against her property at 5025

North Clark Street, Chicago, IL 60640 be extinguished as punitive damages

and/or to protect the Debtor from its improper use is granted/denied/granted in

the amount of _____.

C. That any unextinguished portion of the note and mortgage against Debtor's

property at 5025 North Clark Street, Chicago, IL 60640 shall be restructured so

as to constitute a note fully amortized over 25 years, bearing a fixed interest

rate equal to the lowest Wall Street Journal Prime Rate that existed from when

Bridgeview Bank first contacted the Debtor with a demand to reaffirm the

discharged debt until the date of this order.

ENTERED:

_____
UNITED STATES BANKRUPTCY JUDGE

John F. Cloutier (6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | Chapter 7 |
|    Jualynn M. Kirkel | ) | Case No. 11-47270 |
| | Debtor.) | Hon. Timothy A. Barnes |
| | ) | |
| | ) | Date: 9/18/2012 |
| | ) | Time: 09:30 Room 642 |

## ORDER

    THIS MATTER COMING TO BE HEARD upon the Debtor's Motion to Reopen Chapter

7 Case; due and proper notice of the motion having been given to all relevant parties; the Court

having found that there is sufficient cause to reopen the Chapter 7 case; the Court having

jurisdiction over the subject matter of this proceeding and the parties thereto; and the Court being

fully advised in the premised,

    IT IS HEREBY ORDERED THAT the Debtor's Chapter 7 case is reopened.


ENTERED: *Brian W. Black*

September 18, 2012

_____
UNITED STATES BANKRUPTCY JUDGE

ROA 11 B 47270

APPEARANCE

## United States Bankruptcy Court

For the ___Northern___     District of     ___Illinois___

In re

    Jualynn Kirkel

)
)     Case No. 11-47270
)
)

I, THE UNDERSIGNED, HEREBY FILE MY APPEARANCE AS ATTORNEY FOR

Bridgeview Bank Group, Kevin Ameriks and Joshua Grossman
_____

_____

| | |
|---|---|
| Adam B. Rome | Greiman, Rome & Griesmeyer, LLC |
| Print Name on this Line | Firm Name |
| /s/ Adam B. Rome | FIRM ID NUMBER: _____ |
| Signature | 200 W. Madison St., Ste. 755 |
| ATTORNEY ID NUMBER    6278341 | Street Address |
| | Chicago    IL    60606 |
| | City    State    Zip |
| | Telephone _____ |

Trial Attorneys*

          Adam B. Rome
_____
          Print Name

*Request is made for trial attorney to avoid possible conflicts in scheduling.

    DATED: _____ 10/8/12 _____

TYPE OF DEFENSE COUNSEL:

  CJA _____ ,RETAINED _____ ,SELF _____ ,NONE OTHER _____ ,PUB DEF _____

FOR OFFICE USE ONLY:

  Party Code: P _____ D _____ TP _____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | Case No. 11 B 47270 |
| JUALYNN KIRKEL, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Judge Timothy A. Barnes |

## SCHEDULING ORDER REGARDING SANCTIONS MOTION

This cause coming before the Court on Debtor's Motion for Sanctions (the "Motion"), due notice having been given, and the Court being fully informed in the premises;

IT IS HEREBY ORDERED:

1. The Court will conduct a further status on this matter on December 4, 2012 at 10:30 a.m. (the "Status Hearing"). The Court will accept no evidence at the Status Hearing. At the Status Hearing, the Court will determine whether a combined hearing on the existence of a willful violation of the discharge injunction, if any, and if such a violation exists, the amount of actual and punitive damages related to such violation (an "Evidentiary Hearing") is necessary.

2. Debtor shall file and serve in the manner required by applicable law a statement (the "Debtor's Statement") of all evidence of the alleged willful violation of the discharge injunction and all damages arising therefrom, including attorney's fees, no later than October 26, 2012. Debtor's Statement must contain, at a minimum, declaration(s) sworn under penalty of perjury by Debtor and any other party on whose testimony Debtor will rely, attesting to all facts alleged in the Motion. Debtor's failure to file and properly and timely serve the foregoing Debtor's Statement will result in the cancellation of the Status Hearing and the dismissal of the Motion for failure to prosecute, without further notice, by the Court.

3. Bridgeview Bank Group, Bridgeview Bank and Trust, Joshua Grossman, and Kevin Ameriks (collectively, the "Respondents" and individually, a "Respondent") shall file and serve in the manner required by applicable law any legal response to the Motion (the "Response"), if any, and its evidentiary statement in response (the "Respondent's Statement"), if any, to the Debtor's Statement on or before November 16, 2012. Respondent's Statement must contain all evidence Respondent intends to present in its defense at the Evidentiary Hearing and include, to the extent oral testimony is desired by a witness in support of Respondent, a sworn declaration from such witness as to the issues on which such witness would testify.

4. If Respondent wishes to have oral argument regarding the issues in the Motion, the Debtor's Statement, the Response, or the Respondent's Statement, the Respondent must so indicate in the Response. Failure to file and properly and timely serve the Response, or failure to request oral argument in the Response will constitute a waiver of oral argument by Respondent.

5. If Respondent fails to timely file and properly serve the Respondent's Statement, or if Respondent's Statement fails to challenge the evidentiary nature of the Debtor's Statement, the Debtor's Statement, if filed and properly served, will be deemed admitted, the matter will be deemed fully briefed, the evidentiary record will be deemed complete and no Evidentiary Hearing will be conducted. The Status Hearing will be deemed a date for oral ruling on the Motion, Debtor's Statement and, if filed and properly served, the Response and/or Respondent's Statement.

6. The filing requirements and deadlines of this Scheduling Order Regarding Sanctions Motion shall not be altered except by further order of the Court upon a motion by one of the parties properly noticed, filed and served.

ENTER:

OCT 1 0 2012

Timothy A. Barnes
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
| Debtor.) | | Hon. Timothy A. Barnes |
| | ) | |
| | ) | Date: 10/10/2012 |
| | ) | Time: 09:30 Room 642 |

**NOTICE OF FILING**

To: See Service List

PLEASE TAKE NOTICE that on **10/26/2012** I filed with the United States Bankruptcy Court the attached **Debtor's Statement**.

By:   /s/ John F. Cloutier
       Attorney
John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358 Fax: (727) 865-5272

**CERTIFICATE OF SERVICE**

I, John F. Cloutier, hereby certify that I caused a copy of the following documents that were filed with the Clerk of the Bankruptcy Court on10/26/2012:
**DEBTOR'S STATEMENT**
to be served on the parties listed on the attached Service List by the Court's ECF system and/or U.S. Mail, postage prepaid, on 10/26/2012.
               JOHN F. CLOUTIER

               By:   /s/ John F. Cloutier
                    Attorney

John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

**SERVICE LIST**

Notice was sent by first class mail to the following parties:

Adam B. Rome, Kreiman, Rome & Griesmeyer, LLC, 200 W. Madison St, Ste 755, Chicago, IL 60606
Jualynn Kirkel, 6145 N. Sheridan Road, #30C, Chicago, IL 60660-6855
Pacific Global Bank, 2323 S. Wentworth Ave, Chicago, IL 60616

Notice was sent to the following parties through the court's electronic noticing center.

E-mail/Text: schlosserlaw@gmail.com Nov 24 2011 03:07:47    Roland Schlosser, Law Office of Roland Schlosser, Suite 503, 203 North Wabash Avenue, Chicago, IL 60453
EDI: BANKAMER.COM Nov 24 2011 02:33:00    Bank Of America,  Box 15019, Wilmington, DE 19886-5019
+E-mail/Text: kevin.ameriks@bridgeviewbank.com Nov 24 2011 03:15:44
    Bridgeview Bank Group, 4753 North Broadway Street, Chicago, IL 60640-4986
EDI: CHASE.COM Nov 24 2011 02:33:00 Milwaukee, WI 53201-1319
EDI: CHASE.COM Nov 24 2011 02:33:00 Wilmington, DE 19850-5298
+EDI: CITICORP.COM Nov 24 2011 02:33:00 Sioux Falls, SD 57117-6497
+EDI: CITICORP.COM Nov 24 2011 02:33:00 Sioux Falls, SD 57104-0432
EDI: USBANKARS.COM Nov 24 2011 02:33:00 Cincinnati, OH 45202-392

JOHN F. CLOUTIER

By:   /s/ John F. Cloutier
     Attorney

John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
|  | Debtor.) | Hon. Timothy A. Barnes |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**DEBTOR'S EVIDENTIARY STATEMENT**

Debtor, Jualynn M. Kirkel, hereby submits to the Court the following evidentiary statement to support a finding of contempt and for the imposition of sanctions, both compensatory and punitive, against Bridgeview Bank Group, Bridgeview Bank and Trust, their attorney, Joshua Grossman and their attorney Kevin Ameriks, for violation of this Court's discharge order and the discharge injunction of 11 U.S.C. § 524, and 362, and for the return of money that Bridgeview Bank improperly took from the debtor's account during and after the bankruptcy. The statement includes the following:

**Exhibit**

A. Debtor's Chapter 7 Discharge.

B. Promissory Note on Clark Street Loan.

C. 2005 Change in Terms of Clark Street Loan.

D. Bridgeview Bank Group Mortgage on Clark Street.

E. April 13, 2012 email from Bridgeview Bank Attorney Josh Grossman to Kirkel Attorney.

F. April 14, 2012 email from Kirkel Attorney to Bridgeview Bank Attorney Josh Grossman

  outlining previous conversation regarding demands of Bridgeview Bank.

G. Miscellaneous email.

H. April 19, 2012 email from Josh Grossman where he sent his case law and outlined their

  position that their threats were not a violation of the discharge stay.

I. April 26, 2012 email from Kirkel Attorney to Bridgeview Bank Attorney Josh Grossman arguing that the bank's tactic was a violation of the discharge stay.  Discussion of a long-term refinance of the Clark Street property.

J. April 26, 2012 email from Kirkel Attorney to Bridgeview Bank Attorney Josh Grossman outlining the parties positions that a refinance of the Clark Street loan at 5.5% over 25 years was prudent for both sides.  Also, an inquiry of whether an agreement to pay 20% of the discharged loan on the Sheridan Street condo would be enough to keep them from foreclosing on the Clark Street property.

K. April 30, 2012 email from Bridgeview Bank Attorney Josh Grossman to Kirkel Attorney stating that the bank was not bluffing, that if the Sheridan condo loan was not reaffirmed that they would file foreclosure on the Clark Street property.

L. April 30, 2012 email from Kirkel Attorney to Bridgeview Bank Attorney Josh Grossman arguing that the industry standard for loans like that on the Clark Street property was to rewrite the loan each year and adjust the interest rate to reflect the market rate.

M. April 30, 2012 email from Bridgeview Bank Attorney Josh Grossman to Kirkel Attorney stating that the bank was out of patience and that they needed an offer to repay a portion of the Sheridan Street loan by 5:00 on Wednesday May 2. 2012 or they would file foreclosure the next day.

N. May 2, 2012 offer to the bank to refinance the Clark Street property but not to reaffirm the discharged Clark Street loan.

O. May 2, 2012 email from Bridgeview Bank Attorney Josh Grossman to Kirkel Attorney saying they had not received an offer and asking if he would accept service.

P. May 15, 2012 email from Bridgeview Bank Attorney Josh Grossman to Kirkel Attorney

stating that the bank was rejecting the offer to refinance the Clark Street loan (using terms

previously agreed to be commercially reasonable) with no reaffirmation.

Q. Foreclosure suit filed on July 20, 2012 against Ms. Kirkel's Clark Street property.

R. Affidavit of Julie Kirkel, the Debtor.

S. Debtor's attorney fee affidavit.

T. Affadavit of John F. Cloutier.

U. May 24, 2012 "Past Due Loan Notice, Third Notice" from Bridgeview Bank to Julie Kirkel

for her Sheridan condo.

V. Bank statements on Kirkel account with Bridgeview Bank during foreclosure showing bank

removing money to make the loan payments on the Sheridan condominium

W. Bank Statement sent by Bridgeview Bank on Sheridan condominium loan dated August 31,

2012, after the discharge, showing a minimum payment due of $2462.00.

X. Bank Statement from Bridgeview Bank Group of December 31, 2011, before the discharge

was received, on Sheridan Condo loan.

Y. Bank Statement sent by Bridgeview Bank on Sheridan condominium loan dated Julyt 31,

2012, after the discharge, showing a minimum payment due of $2099.60.

Z. March 25, 2012 Bridgeview Bank statment showing money being taken out of debtor's

account on February 27, 2012 during the automatic stay under 362.

AA. Payment receipts to Bridgeview Bank Group from the debtor for mortgage paymens she

made on the property at 5025 N. Clark Street in July, Aug, and Sept 2012. Such payments

show that the bank continues to take her payments on the property, both before and after they

file foreclosure.

JOHN F. CLOUTIER

By:   /s/ John F. Cloutier
        Attorney
John F. Cloutier (6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358 Fax: (727) 865-5272

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

# Exhibit A

Northern District of Illinois

**Case No. 11–47270**

**Chapter 7**

In re: Debtor (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

  Jualynn Kirkel
  aka Jualynn M. Kirkel, aka Julie
  Mae Kirkel
  6145 North Sheridan Road
  Apt. 30C
  Chicago, IL 60660

Social Security / Individual Taxpayer ID No.:
  xxx–xx–2906

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR

    It appearing that the debtor is entitled to a discharge, **IT IS ORDERED:** The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

FOR THE COURT

Dated: <u>March 7, 2012</u>            <u>Kenneth S. Gardner, Clerk</u>
                    United States Bankruptcy Court

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

ROA 11 B 47270

**B18 (Official Form 18) (12/07) – Cont.**

## EXPLANATION OF BANKRUPTCY DISCHARGE
### IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

**Collection of Discharged Debts Prohibited**

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

**Debts That are Discharged**

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

**Debts that are Not Discharged.**

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes (in a case filed on or after October 17, 2005);

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans (in a case filed on or after October 17, 2005).

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

Case 11-47270    Doc 30    Filed 03/07/12    Entered 03/09/12 23:30:52    Desc Imaged
Certificate of Notice    Page 3 of 4

United States Bankruptcy Court
Northern District of Illinois

In re:                                                                Case No. 11-47270-SPS
Jualynn Kirkel                                                        Chapter 7
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0752-1          User: dgomez          Page 1 of 2          Date Rcvd: Mar 07, 2012
                             Form ID: b18          Total Noticed: 18

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Mar 09, 2012.
db           +Jualynn Kirkel,   6145 North Sheridan Road,   Apt. 30C,   Chicago, IL 60660-6855
18092246     +Chicago Title Land Trust Co.,   4240 Paysphere,   Chicago, IL 60674-0001
18092249     +Kiewit Western Co. And Reyes Group, LTD.,   C/O LaKoma Law Firm, LLC,
               1200 Jorie Boulevard, Suite 329,   Oak Brook, IL 60523-2283
18092240     +Kirkel Jualynn,   6145 North Sheridan Road,   Apt 30C,   Chicago, IL 60660-6855
18092241     +Law Office of Roland Schlosser,   203 North Wabash Avenue Suite 503,   Chicago, IL 60601-2410
18092250     +Pacific Global Bank,   2323 South Wentworth Avenue,   Chicago, IL 60616-2093
18092251     +Sheila Musker,   C/O Parillo, Weiss & O'Halloran,   77 West Wacker Drive, 50th Floor,
               Chicago, IL 60601-1604
18092252     +Tri-State Financial,   Box 2520,   Wilkes-Barre, PA 18703-0018

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
tr           +EDI: QDMGUTFELD.COM Mar 08 2012 01:28:00    Deborah Michelle Gutfeld,   Perkins Coie LLP,
               131 South Dearborn,   Chicago, IL 60603-5559
18138793      EDI: BECKLEE.COM Mar 08 2012 01:28:00    American Express Bank FSB,   c/o Becket and Lee LLP,
               POB 3001,   Malvern PA 19355-0701
18092242      EDI: BANKAMER.COM Mar 08 2012 01:28:00    Bank Of America,   Box 15019,
               Wilmington, DE  19886-5019
18109393     +E-mail/Text: kevin.ameriks@bridgeviewbank.com Mar 08 2012 02:45:07    Bridgeview Bank Group,
               4753 N. Broadway,   Chicago, IL 60640-4986
18092243     +E-mail/Text: kevin.ameriks@bridgeviewbank.com Mar 08 2012 02:45:07    Bridgeview Bank Group,
               4753 North Broadway Street,   Chicago, IL 60640-4986
18092244      EDI: CHASE.COM Mar 08 2012 01:28:00    Chase Bank,   11200 West Parkland Avenue,   Box 3139,
               Milwaukee, WI  53201-1319
18092245      EDI: CHASE.COM Mar 08 2012 01:28:00    Chase Bank,   Cardmember Services,   Box 15298,
               Wilmington, DE  19850-5298
18092247     +EDI: CITICORP.COM Mar 08 2012 01:28:00    Citibank/Home Depot,   Box 6497,
               Sioux Falls, SD 57117-6497
18092248     +EDI: CITICORP.COM Mar 08 2012 01:28:00    Citicards CBNA,   701 East 60th Street N,
               Sioux Falls, SD 57104-0432
18092253      EDI: USBANKARS.COM Mar 08 2012 01:28:00    US Bank,   425 Walnut Street,
               Cincinnati, OH  45202-3923
                                                                       TOTAL: 10

        ***** BYPASSED RECIPIENTS *****
NONE.                                                                  TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security
Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the
bankruptcy rules and the Judiciary's privacy policies.

Date: Mar 09, 2012                    Signature:    Joseph Speetjens

Case 11-47270    Doc 30    Filed 03/07/12    Entered 03/09/12 23:30:52    Desc Imaged
Certificate of Notice    Page 4 of 4

District/off: 0752-1          User: dgomez              Page 2 of 2         Date Rcvd: Mar 07, 2012
                             Form ID: b18              Total Noticed: 18

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on March 7, 2012 at the address(es) listed below:
          David Richardson    on behalf of Creditor  Pacific Global Bank drichardson@neryrichardson.com
          Deborah Michelle Gutfeld   gutfeldch7@perkinscoie.com,
          dgutfeld@ecf.epiqsystems.com;cdennis@nge.com
          Gloria C Tsotsos    on behalf of Creditor  JPMorgan Chase Bank, National Association
          nd-three@il.cslegal.com
          Joshua M Grossman    on behalf of Creditor  Bridgeview Bank Group
          joshua.grossman@bridgeviewbank.com
          Patrick S Layng   USTPRegion11.ES.ECF@usdoj.gov
          Roland Schlosser    on behalf of Debtor Jualynn Kirkel schlosserlaw@gmail.com
                                                                               TOTAL: 6

Case: 1:17-cv-03920 Document #: 141 Filed: 05/28/13 Page 42 of 44 PageID #:97
Case: 1:12-cv-03921 Document #: 41 Filed: 05/28/13 Page 11 of 540 PageID #:11
Document      Page 11 of 12

**PROMISSORY NOTE** 

# Exhibit B

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $245,000.00 | 05-02-2007 | 05-01-2008 | *** | 01E0 / 71 | 00000042725 | 35 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**   Jualynn Mai Kirkel (SSN: 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)
Bridgeview Bank Group as Trustee u/t/a dated
January 13, 1994 a/k/a Trust #94-101
6145 North Sheridan Road, Unit 30C
Chicago, IL 60660

**Lender:**   Bridgeview Bank Group
7940 S. Harlem Ave.
Bridgeview, IL 60455

---

**Principal Amount: $245,000.00**          **Initial Rate: 8.250%**          **Date of Note: May 2, 2007**

**PROMISE TO PAY.** Jualynn Mai Kirkel; and Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101 ("Borrower") jointly and severally promise to pay to Bridgeview Bank Group ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Forty-five Thousand & 00/100 Dollars ($245,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 1, 2008. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 2, 2007, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is Lender's Prime Rate (the "Index"). This is the rate Lender charges, or would charge, on 90-day unsecured loans to the most creditworthy corporate customers. This rate may or may not be the lowest rate available from Lender at any given time. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 8.250% per annum.** The interest rate to be applied to the unpaid principal balance during this Note will be at a rate equal to the Index, resulting in an initial rate of 8.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bridgeview Bank Group, ATTN: Loan Operations, 4753 N Broadway Chicago, IL 60640.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **10.000% of the regularly scheduled payment or $250.00,** whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 10.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required, to permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

ROA 11 B 47270

**PROMISSORY NOTE**
**(Continued)**

Loan No: 533376000-10301                                                        Page 2

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**CONFESSION OF JUDGMENT.** Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Junior Mortgage from Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #84-101 to Lender dated May 2, 2007 for property located at 5025 N Clark, Chicago, IL 60640 .

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person currently is authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of his or her authority: **Jualynn Mai Kirkel.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bridgeview Bank Group 4753 N Broadway Chicago, IL 60640.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

ROA 11 B 47270

**PROMISSORY NOTE**
**(Continued)**

Loan No: 533376000-10301                                                                                  Page 3

**TRUSTEE'S LIABILITY.** This Note is being executed by Bridgeview Bank Group not personally but as Trustee in the exercise of the power and authority conferred upon and vested in that person or entity as such Trustee, and is payable by Bridgeview Bank Group only out of the assets of the Trust described above or from any collateral for this loan. This limitation, however, shall in no way modify or discharge the personal liability of any other guarantor, co-borrower, or cosigner of this Note.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
JuaAnn Mai Kirkel, Individually

BRIDGEVIEW BANK GROUP AS TRUSTEE U/T/A DATED JANUARY 13, 1994 A/K/A TRUST #94-101

BRIDGEVIEW BANK GROUP, not personally but as Trustee under that certain trust agreement dated 01-13-1994 and known as Bridgeview Bank Group as Trustee u/t/a dated January 13, 1994 a/k/a Trust #94-101.

By: _____
Authorized Signer for Bridgeview Bank Group

LASER PRO Lending, Ver. 5.36.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - IL C:\LASERPRO\CFI\LPL\D20.FC TR-7445 PR-9

ROA 11 B 47270