## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:                  )
                      )    Case No. 11-47270
   JUALYNN M. KIRKEL,        )    Ch: 7
                      )    Hon. Timothy Barnes
        Debtor.           )

### AFFIDAVIT OF KEVIN AMERIKS

KEVIN AMERIKS, being first duly sworn on oath, deposes and states that I have firsthand knowledge of the facts set forth in this Affidavit, and if sworn as a witness, I can competently testify to the following facts:

     1.      I am over the age of eighteen and competent to provide the following testimony.

     A.      BRIEF EDUCATIONAL/PROFESSIONAL BACKGROUND

     2.      I am an attorney in good standing and duly licensed to practice law in the State of Illinois.

     3.      I am Vice President Corporate Counsel for Bridgeview Bank Group ("BBG").

     B.      KIRKEL'S LOANS WITH BBG

     4.      During my tenure with BBG, the Debtor, Jualynn Kirkel ("Debtor" or "Kirkel") filed for Chapter 7 Bankruptcy. Kirkel scheduled two debts to BBG on her bankruptcy filing: (1) a commercial loan in the amount of $245,000 (the "Commercial Loan"), secured by a second mortgage on 5025 N. Clark Street, Chicago (the "Commercial Property"); and (2) a home equity line of credit in the amount of $90,000 (the "Residential Loan"), secured by a mortgage on her residence, 6156 N. Sheridan Road #30, Chicago (the "Residential Property").

     5.      I first became aware of Kirkel's bankruptcy sometime in late 2011 in my capacity as Corporate Counsel of BBG, in the ordinary course of my business activities.

1

6.     In my capacity as Vice President and Corporate Counsel of BBG, I am an existing subscriber of electronic bankruptcy notices transmitted by the Bankruptcy Noticing Center ("BNC").

7.     Though I received a copy of the Kirkel bankruptcy filing and discharge via BNC, I had no communications with Kirkel or any of her attorneys during the bankruptcy proceedings.

8.     Joshua Grossman, a former in-house counsel for BBG, handled all Chapter 7 bankruptcies involving residential loans, including Kirkel's.  Upon Mr. Grossman's departure from BBG in June of 2012, I inherited certain of Mr. Grossman's files, and received a status report of such matters, including that of Julie Kirkel.

C.     SUBSEQUENT COMMUNICATIONS WITH KIRKEL'S NEW COUNSEL

9.     Upon reviewing the Kirkel file, I determined that Kirkel's Commercial Loan with BBG, secured by a Mortgage on the Commercial Property, matured on February 5, 2012, without any agreement to make a new loan.

10.     Before he accepted employment elsewhere, Mr. Grossman informed me that he was unable to reach an agreement with Kirkel as to a new loan for the Commercial Property (or, for that matter, the Residential Property).  As a result, in July of 2012, I filed a Complaint to Foreclose Mortgage on the Commercial Property, which secured the Commercial Loan with BBG that had matured on February 5, 2012, during the bankruptcy, without being paid in full.

11.     While I took no action as to the Residential Property, I was instructed to file the Foreclosure Complaint because BBG is penalized by its regulators when a note has matured without an agreement to adequately protect the Bank's security interest.  The Foreclosure Complaint named Kirkel as a necessary party in her capacity as the trust beneficiary and as the borrower under the Note that the Mortgage secured, but did not allege in any way that Kirkel was

2

personally liable for the debt or had defaulted on account of the bankruptcy filing or any actions taken therein. Instead, the Complaint merely alleged that BBG's Commercial Loan to Kirkel matured on February 5, 2012 but was not paid in full.

12.    I contacted Kirkel's bankruptcy counsel of record, Mr. Roland Schlosser, to see if he would accept service of BBG's Foreclosure complaint. Other than that, I have never had any contact with Schlosser regarding any of these matters.

13.    I had no communications with Kirkel's new attorney, John Cloutier, until September of 2012, well after the bankruptcy was discharged and the foreclosure action was filed on the Commercial Property. In fact, I was not aware of Attorney Cloutier's representation of Kirkel until he filed the instant motion for sanctions against me for having filed the foreclosure.

14.    I have never met or had any communications with Kirkel.

15.    I have read Debtor's motion for sanctions against me, and accompanying evidentiary statement. Neither the motion for sanctions nor the evidentiary statement identifies any conduct or communications whatsoever on my part, much less any sanctionable or improper conduct.

16.    I did not engage in any improper or sanctionable conduct.

FURTHER, AFFIANT SAYETH NAUGHT.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Kevin Ameriks

3

Case 1:17-cv-03092-TOR   Document #207-1   Filed 05/28/13   Page 4 of 43   PageID #367
Case 4:17-cv-03092-TOR   Document #207-1   Filed 05/28/13   Page 41 of 43   PageID #367
Exhibits to Exhibit A    Page 38 of 41

# EXHIBIT D

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:                          )

                                 )      Case No. 11-47270

JUALYNN M. KIRKEL,          )      Ch: 7

                                   )      Hon. Timothy Barnes

             Debtor.             )

### AFFIDAVIT OF ADAM B. ROME

ADAM B. ROME, being first duly sworn on oath, deposes and states that I have firsthand knowledge of the facts set forth in this Affidavit, and if sworn as a witness I can competently testify to the following facts:

1.      I am over the age of eighteen and competent to provide the following testimony.

**A.**      BRIEF EDUCATIONAL/PROFESSIONAL BACKGROUND

2.      I am an attorney in good standing and duly licensed to practice law in the State of Illinois.

3.      I am a partner with the law firm of Greiman, Rome & Griesmeyer, LLC, which represents the Defendants in this proceeding.

4.      Affiant concentrates his practice on representing lenders in financial services based litigation, including bankruptcy, commercial foreclosures, and complex workouts.

**B.**      JUALYNN KIRKEL'S SALE OF THE PROPERTY

5.      On October 10, 2012, counsel for the Debtor, John F. Clouiter ("Cloutier") asked me if my client, Bridgeview Bank Group ("Bridgeview"), would be willing to enter into a settlement agreement with the Debtor. The Debtor requested, among other things, a favorable loan secured by the property commonly known as 5025 N. Clark Street, Chicago (the "Commercial Property").

1

Case 1:17-cv-03021 Document #207-1 Filed 05/28/13 Page 6 of 43 PageID #:360
Case 1:13-cv-03921 Document #207-1 Filed 05/28/13 Page 6 of 43 PageID #:360 Exhibit
Exhibits to Exhibit A    Page 40 of 41

6.      I told Cloutier that I would speak with my client about this type of settlement, and I would get back to him.

7.      On October 26, 2012, I received an email from Clouiter where Clouiter told me that Kirkel is no longer interested in refinancing the Commercial Property with Bridgeview.

8.      On November 12, 2012, Clouiter sent me an email where he retracted his October 26, 2012 position, and told me that the Debtor would like to enter into a settlement offer with the Defendants where the Debtor would receive "some kind of offer as to permanent financing" against the Commercial Property.  Clouiter suggested "a 25 year loan, fully amortized with an interest rate of 3.5%...."

9.      However, after Bridgeview conveyed a settlement offer to Clouiter (without admitting to any liability) Clouiter, on November 25, 2012, sent me an email where he told me that the Debtor "has decided to sell her property."

10.     On November 26, 2012, Clouiter and I spoke on the telephone about the Debtor's Sales Contract.  I asked Clouiter if the Debtor needed Bridgeview's consent to engage in a short sale.  Clouiter told me that my client would be paid in full, and therefore, the Debtor did not need Bridgeview's consent to sell the Commercial Property.

11.     On November 27, 2012, I asked Clouiter (in an email and again on the telephone) for a copy of the Sales Contract for the Commercial Property.

12.     On November 27, 2012, Clouiter told me that he would think about providing me with a copy of the Sales Contact, but as of the current date, he has not provided it to me.

ROA 11 B 47270

Case 4:17-cv-03021 Document #: 1-1 Filed: 05/28/13 Page 7 of 43 PageID #: 370
Case 1:13-cv-03092 Document #: 107-1 Filed: 05/28/13 Page 7 of 43 PageID #: Exhibit
Exhibits to Exhibit A    Page 41 of 41

FURTHER, AFFIANT SAYETH NAUGHT.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Adam B. Rome

ROA 11 B 47270

# Please wait...

If this message is not eventually replaced by the proper contents of the document, your PDF viewer may not be able to display this type of document.

You can upgrade to the latest version of Adobe Reader for Windows®, Mac, or Linux® by visiting  http://www.adobe.com/go/reader_download.

For more assistance with Adobe Reader visit  http://www.adobe.com/go/acrreader.

Windows is either a registered trademark or a trademark of Microsoft Corporation in the United States and/or other countries. Mac is a trademark of Apple Inc., registered in the United States and other countries. Linux is the registered trademark of Linus Torvalds in the U.S. and other countries.

ROA 11 B 47270

To view the full contents of this document, you need a later version of the PDF viewer. You can upgrade to the latest version of Adobe Reader from www.adobe.com/products/acrobat/readstep2.html

For further support, go to www.adobe.com/support/products/acrreader.html

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

In Re:                          )          BK No.:    11-47270
Jualynn Kirkel                  )
                                )          Chapter:  7
                                )          Honorable Timothy A. Barnes
                                )
                                )
        Debtor(s)               )

### Order Granting in Part, Denying in Part,
### Motion for Sanctions

   This matter coming to be heard on the motion of debtor, Jualynn Kirkel, for sanctions based on an alleged willful violation of a discharge injunction by creditor, Bridgeview Bank Group, and the Court being fully advised in the premises;

   IT IS HEREBY ORDERED:

   For the reasons stated at the February 6, 2013 hearing concurrent herewith, the Motion for Sanctions is granted in part and denied in part. The Court finds that a willful violation exists, and awards judgment against creditor Bridgeview Bank Group for actual costs constituting attorneys fees in the amount of $4,000.

   The motion is denied in all other respects.

Enter:

Dated:  **FEB 06 2013**            United States Bankruptcy Judge

**Prepared by:**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
| Debtor.) | | Hon. Timothy A. Barnes |
| | ) | |
| | ) | Date: April 2, 2013 |
| | ) | Time: 10:00 Room 642 |

### NOTICE OF MOTION

To: See Service List

PLEASE TAKE NOTICE that on **4/2/2013 at 10:00 am.** or as soon thereafter as counsel may be heard, we will appear before United States Bankruptcy Judge Timothy A. Barnes, or any other judge sitting in her stead, in Courtroom 642 of the Dirksen Federal Courthouse, 219 S. Dearborn Street, Chicago, Illinois, on the attached **Motion to Reopen Chapter 7 Case**, at which time and place you may appear as you see fit.

JOHN F. CLOUTIER

By:   /s/ John F. Cloutier
        Attorney
John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

ROA 11 B 47270

## CERTIFICATE OF SERVICE

I, John F. Cloutier, hereby certify that I caused a copy of the following documents that were filed with the Clerk of the Bankruptcy Court on 2/20/2013:

**Motion to Reopen Chapter 7 Case**
to be served on the parties listed on the attached Service List by the Court's ECF system and/or U.S. Mail, postage prepaid, on 2/20/2013.

## SERVICE LIST

Notice was sent by first class mail to the following parties:

Jualynn Kirkel, 6145 N. Sheridan Road, #30C, Chicago, IL 60660-6855

Notice was sent to the following parties through the court's electronic noticing center.

E-mail/Text: Adam Rome <arome@grglegal.com> Adam B. Rome, Kreiman, Rome & Griesmeyer, LLC, 200 W. Madison St, Ste 755, Chicago, IL 60606.  Attorney for Bridgeview Bank Group, Kevin Ameriks, Josh Grossman.

JOHN F. CLOUTIER
By:   /s/ John F. Cloutier
          Attorney

John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
|  | Debtor.) | Hon. Timothy A. Barnes |
|  | ) |  |
|  | ) | Date: 4/2/2013 |
|  | ) | Time: 10:00 Room 642 |

## Motion to Reopen Chapter 7 Case

The Debtor, Jualynn M. Kirkel, through undersigned counsel, hereby files this Motion to reopen her chapter 7 case.  In support thereof the Debtor states the following:

1.  This case was instituted by the filing of a voluntary petition under chapter 7 of the U.S. Bankruptcy Code on November 22, 2011.

2.  On March 7, 2012 a discharge order was entered.

3.  On September 18, 2012 the case was reopened to allow a motion for sanctions to be filed against Bridgeview Bank Group and their attorneys Kevin Ameriks and Josh Grossman.

4.  On February 6, 2013 oral arguments were heard and the court made a ruling granting in part and denying in part the motion.  A written order was entered on February 7, 2013 along with an order again closing the case.

5.  The debtor believes that certain errors in law were made in the February 7, 2013 ruling that should be addressed.

Wherefore, Debtor respectfully requests this court enter an order reopening this Chapter 7 case pursuant to section 350(b) in order to pursue a **MOTION TO ALTER OF AMEND ORDER GRANTING IN PART, DENYING IN PART, MOTION FOR SANCTIONS**, and

ROA 11 B 47270

for such other relief as the court may deem just and proper.  Pursuant to 28 U.S.C. § 1930, a fee

to reopen should not be charged to the Debtor since the matter relates to her discharge.


     Respectfully submitted on 2/20/2013

                                       By:  /s/ John F. Cloutier
                                            Attorney
                                     John F. Cloutier (6244415)
                                     5923 S. Kolmar Ave
                                     Chicago, IL 60629
                                     Phone: (847) 275-6358
                                     Fax: (727) 865-5272

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
| Debtor.) | | Hon. Timothy A. Barnes |
| | ) | |
| | ) | |
| | ) | |

## ORDER REOPENING CHAPTER 7 CASE

THIS MATTER COMING TO BE HEARD upon the Debtor's Motion to Reopen Chapter

7 Case; due and proper notice of the motion having been given to all relevant parties; the Court

having found that there is sufficient cause to reopen the Chapter 7 case; the Court having

jurisdiction over the subject matter of this proceeding and the parties thereto; and the Court being

fully advised in the premised,

IT IS HEREBY ORDERED THAT the Debtor's Chapter 7 case is reopened.


ENTERED:


_____
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
| | Debtor.) | Hon. Timothy A. Barnes |
| | ) | |
| | ) | Date: May 7, 2013 |
| | ) | Time: 10:00 Room 642 |

### NOTICE OF MOTION

To: See Service List

PLEASE TAKE NOTICE that on **5/72013 at 10:00 am.** or as soon thereafter as counsel may be heard, we will appear before United States Bankruptcy Judge Timothy A. Barnes, or any other judge sitting in her stead, in Courtroom 642 of the Dirksen Federal Courthouse, 219 S. Dearborn Street, Chicago, Illinois, on the attached **MOTION TO ALTER OR AMEND ORDER GRANTING IN PART, DENYING IN PART, MOTION FOR SANCTIONS**, at which time and place you may appear as you see fit.

JOHN F. CLOUTIER

By:   /s/ John F. Cloutier
      Attorney
John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

## CERTIFICATE OF SERVICE

I, John F. Cloutier, hereby certify that I caused a copy of the following documents that were filed
with the Clerk of the Bankruptcy Court on 2/20/2013:

**MOTION TO ALTER OR AMEND ORDER GRANTING IN PART, DENYING IN
PART, MOTION FOR SANCTIONS** to be served on the parties listed on the attached Service
List by the Court's ECF system and/or U.S. Mail, postage prepaid, on 2/20/2013.

### SERVICE LIST

Notice was sent by first class mail to the following parties:

Jualynn Kirkel, 6145 N. Sheridan Road, #30C, Chicago, IL 60660-6855

Notice was sent to the following parties through the court's electronic
noticing center.

E-mail/Text: Adam Rome <arome@grglegal.com> Adam B. Rome, Kreiman, Rome &
Griesmeyer, LLC, 200 W. Madison St, Ste 755, Chicago, IL 60606. Attorney for Bridgeview
Bank Group, Kevin Ameriks, Josh Grossman.

JOHN F. CLOUTIER
By:  /s/ John F. Cloutier
Attorney

John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
|    Jualynn M. Kirkel | ) | Case No. 11-47270 |
| Debtor. | ) | Hon. Timothy A. Barnes |
|  | ) |  |
|  | ) | Date: 5/7/2013 |
|  | ) | Time: 10:00 Room 642 |

## MOTION TO ALTER OF AMEND ORDER GRANTING IN PART, DENYING IN PART, MOTION FOR SANCTIONS

NOW COMES the Debtor, Jualynn M. Kirkel, by and through his attorney, John F. Cloutier, to present her **MOTION TO ALTER OR AMEND ORDER GRANTING IN PART, DENYING IN PART, MOTION FOR SANCTIONS** and states as follows:

   This motion is made under Rule 59(e) of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 9023. Debtor respectfully requests that the Court reconsider, alter and amend the Order on Debtor's Motion for Sanctions [ECF No. 73].

### I. STANDARD FOR RULE 59 RELIEF

   Fed. R. Civ. P. 59(e), made applicable to this bankruptcy proceeding by Fed. R. Bankr. P. 9023, "allows a party to direct the . . . court's attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) (citing *Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995)). "The decision whether to grant or deny a Rule 59(e) motion is entrusted to the sound judgment of the . . . court." *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996) (citing *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th

Cir.1995)). "A Rule 59(e) motion should be granted if there exists 'a manifest error of law or fact.'" *Divane v. Krull Elec. Co., Inc.*, 194 F.3d 845, 848 (7th Cir. 1999) (citing *Moro*, 91 F.3d at 876)). For the reasons set forth below, the Bluegrass Companies respectfully request that the Court alter, amend, and/or clarify the Order in accordance with the arguments set forth herein.

## II.     FACTS

1. On November 22, 2011 the Debtor file  a voluntary petition for relief under chapter 7 of the bankruptcy code.

2.  The Debtor had 2 loans with the creditor, Bridgeview Bank Group at the time of the chapter 7 filing.  One, a second mortgage on a condominium ("condo loan") where she lived, and a second mortgage on a commercial property ("commercial loan") she owned.

3.  Discussions during the bankruptcy proceedings to reaffirm proved fruitless and no reaffirmation agreement was reached.

4.  During the bankruptcy proceedings the bank's V.P. Nerma Bajramovic contacted the Debtor and asked her to come in and talk about the loans.  When the Debtor arrived she met with the V.P Bajramovic as well as the bank's president Suellen Long.  They asked her what her intentions were with the properties and the Debtor informed them that she was going to let the condo go but keep the commercial loan.  They told her that she would have to pay something on the condo loan.

5. On March 7, 2012 a discharge order was entered.  No reaffirmation had been entered into.

6.  In March 2012, after the discharge, the bank again asked the Debtor to come in to talk

Case: 11-13720 Document: 00512541... Filed: 05/28/13... Page: 20 of 43... Date Filed: ...

Document      Page 5 of 17

about the loans.  Again she met with the bank's V.P and President of that branch.

They told her that she would have to agree to pay something on the discharged condo

loan or that they would foreclose on the commercial loan.  The Debtor told them that

she had no money to pay the condo loan but that she would continue to pay on the

commercial loan as she always had.  They told her she would then have to get a new

lawyer who would have to call the bank's lawyer.

7. Because of the threat of foreclosure she contacted a friend who was experienced in

foreclosure matters who recommended she contact the undersigned attorney.  They

met and she showed him the discharge paperwork.

8. The undersigned attorney called the bank's attorney who was expecting a call and was

told that the bank would foreclose if the Debtor did not agree to reaffirm 55% of the

discharged condominium loan, but that they were open to offers.  He claimed he had

case law to back up the fact that he bank could make such a post-discharge demand.

9.  Over the next month the parties discussed the matter with the bank demanding an

offer to reaffirm the discharged condominium debt or that foreclosure of the

commercial loan would begin.

10. The undersigned attorney took the position that it was willing to enter into an

agreement to pay the commercial loan but that it would not agree to any reaffirmation

on the condo loan.

11. A little over 2 months latter the bank filed a foreclosure action against the

commercial loan but nothing against the condo loan.

12. The Debtor reopened the bankruptcy case and filed a motion for sanctions against the

bank and their 2 attorneys.

13. After evidentiary statements were filed and oral argument the court ruled that the
bank had violated the discharge stay when it made quasi demands for a personal
deficiency judgment in the foreclosure suit and awarded attorney fees. The court
found that there was no violation of the discharge injunction when bank officials sent
the debtor billing statements on the discharged debt, contacted the Debtor threatening
to foreclose the commercial loan if she did not reaffirm some of the discharged condo
loan, instructed her to get a new attorney to contact the bank's attorney, when the
bank's attorney demanded a reaffirmation or he would foreclosure, or when the bank
actually began to foreclose.

14. The court found that since the bank could have begun foreclosure proceedings
against the commercial loan anyway, that the bank's post discharge communications
to the Debtor demanding a reaffirmation of the discharged condominium debt or that
the bank would foreclosure her commercial property, caused her no additional
damages because she would have sustained the same damages if the bank had merely
begun foreclosure.

### III.     ARGUMENT

**The Court erred in finding that post discharge communications aimed at
getting the Debtor to reaffirm discharged debt was not a violation of Rule
524(a)(2).**

**A. Post-Discharge reaffirmation agreements are not allowed.**

Reaffirmation agreements are items that are strictly regulated by the bankruptcy
court and can only take place during the bankruptcy proceedings and not after the
discharged is entered. Rule 524(c)(1) states that the agreement must have been made

before the discharge had been issued.  Any reaffirmation agreement made after the

discharge would be unenforceable.  See In re Salas, 431 B.R. 394,396 (Bankr. W.D. Tex.

2010),  In re Bellano, 456 B.R. 220, 223 (Bankr. E.D. Pa. 2011), and In re Golladay, 391,

B.R. 417, 421 (C.D. Ill. 2008).

Because reaffirmation agreements are effectively waivers of discharge with respect

to a particular creditor, they are exceptions to the "fresh start" objective of the

bankruptcy process and as such, they are strictly construed and the requirements imposed

for their validity are enforced rigidly.  Accordingly, the Bankruptcy Code contains

numerous safeguards to ensure that reaffirmations are genuine and that they are not

entered into as a result of overreaching creditors' practices. In re Golladay, 391, B.R.

417, 421 (C.D. Ill. 2008).

As the statute and the multitude of cases addressing the topic make manifest,

reaffirmation agreements are unenforceable unless they are entered into before issuance

of a discharge.  11 U.S.C. § 524(c), (d).  See In re Golladay, 391, B.R. 417, 421 (C.D. Ill.

2008).  The timing requirement is imposed as a matter of substantive statutory law and

not by procedural rule.  While the date for discharge may be delayed in appropriate cases,

the statutory requirement cannot be waived or extended after discharge occurs.  *In re

Collins,* 243 B.R. 217, 219 (Bankr.D.Conn.2000), *quoting* 3 William L. Norton, Jr.,

*Norton Bankruptcy Law & Practice 2d* § 48.8 (1999), In re Golladay, 391, B.R. 417, 421

(C.D. Ill. 2008).

**B.  Any action used to collect a discharged debt is a violation of the discharge**

   **injunction**.

The purpose of 524(a)(1) was to accord complete relief to debtors.  Whitaker v.

Lockert, 16 Bankr. 917, 921 (Bankr. M.D. Tenn 1982).  By insuring that once a debt was

discharged, the House intended section 524(a)(2) to eliminate any doubt concerning the

effect of the discharge as a total prohibition on debt collection efforts. See H.R. Rep. No.

525, 95th Cong., 2d Sess. 80.

The statute's plain terms obviate consideration of its legislative history, *Hartford*

*Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000), but it is worth

noting that the legislative history, which because of its reference to direct dunning

activities, also supports a broad reading of the injunction contained in section 524(a)(2):

> "Subsection (a) . . . operates as an injunction against the commencement or
> continuation of an action, the employment of process, or any act, including
> **telephone calls, letters, and personal contacts** to collect, recover or offset
> any discharged debt as a personal liability of the debtor, or from property of the
> debtor, whether or not the debtor has waived discharge of the debt involved. The
> injunction is to give complete effect to the discharge and to eliminate any doubt
> concerning the effect of the discharge as a total prohibition on debt collection
> efforts. This paragraph has been expanded over a comparable provision in
> Bankruptcy Act section 14f to cover any act to collect, such as dunning by
> telephone or letter, or indirectly through friends, relatives, or employees,
> harassment, threats of repossession and the like. The change is consonant with the
> new policy forbidding binding reaffirmation agreements under proposed 11 U.S.C.
> § 524(d), and is intended to insure that once a debt is discharged, the debtor will not
> be pressured in any way to repay it. In effect, the discharge extinguishes the debt,
> and creditors may not attempt to avoid that."

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 365-66 (1977); S. Rep. No. 95-989, 95th

Cong., 2d Sess. 80 (1978) (emphasis added).


**C. The Court erred in finding that post discharge communications aimed at**

**getting the Debtor to reaffirm discharged debt was not a violation.**

On March 7, 2012 the discharge order was entered with no reaffirmation agreement

between the Debtor and Bridgeview Bank Group, despite the fact that talks had taken

place between counsel for the bank and counsel for the Debtor. The affidavit from the bank's attorney made it clear that he had contacted the attorney for the debtor, Mr. Schlosser, many times prior to the discharge order being entered but could not reach an agreement. He even stated that he had talked to her attorney on the day of the discharge but that no agreement was reached. He then said he never spoke with her attorney Mr. Schlosser after the day of the discharge. See defendant's evidentiary statement Exhibit A.

Since the bank had not made any headway in obtaining an agreement for the debtor to pay the discharged condo loan by talking to the debtor's attorney, they decided on another course of action, they contacted her directly and bypassed her attorney.

Bank officials, who had known the Debtor for many years, contacted her and had her come in to discuss the loans. They tried to get her to agree to pay the discharged condo loan and kept telling her she had to pay something on it. When their efforts failed they told her she needed to get a new attorney and for him to contact the bank's attorney.

The Debtor already had an attorney. Bringing her in to threaten her into reaffirming a discharged debt is a violation of 524(a)(2) which says the discharge injunction, "*operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived*;". The Bank was clearly acting to get the Debtor to pay on the discharged condo loan and that was a violation.

### D. The affidavit of Suellen Long fails to explain the March 27, 2012 meeting.

The affidavit of Suellen Long, Exhibit B in the respondent's evidentiary statement, states that:

"Nerma Bajramovic and I were instructed to hold the meeting because Kirkel's

bankruptcy proceeding was concluded, the Commercial Loan and Residential Loan were

both in default, and Kirkel's counsel in the bankruptcy proceeding was not responding to

BBG's inquiries regarding Kirkel's intentions with respect to the Residential Property

and Commercial Property.

At the meeting referenced in the prior paragraph, Kirkel informed Ms. Bajramovic and I

that she had retained new counsel to represent her regarding her dealings with BBG;

namely, Attorney John F. Cloutier.  Ms. Bajramovic and I obtained Attorney Cloutier's

contact information and the meeting ended."

Ms. Long admitted that they had setup the meeting.  She then says that the only

thing that happened was that Ms. Kirkel brought in the contact information for her "new

counsel to represent her regarding her dealings with BBG, namely, Attorney John

Cloutier."  Strangely enough, Ms. Kirkel had never met or spoken to the attorney, nor

even heard his name.  Immediately after the meeting Ms. Kirkel called a friend at V & T

Investment Corporation, Vinh Huynh to have him recommend a foreclosure attorney.

V&T is in the business of purchasing foreclosure property.  Mr. Huynh called her back

shortly afterwards with the number of attorney John Cloutier.  The sequence of events is

clearly shown in phone records, which were not a part of the evidentiary record.

Ms. Long admitted setting up the meeting yet says that nothing was discussed

regarding the loans.  The affidavit implies that the only thing that happened was that Ms.

Kirkel gave them her attorney contact meeting.  Why would Ms. Kirkel go into a meeting

to give then her attorney's contact information considering:

1.  Ms. Kirkel did not have an attorney yet, but found a name shortly after the

meeting;

2. she never spoke to the attorney that Suellen Long said Ms Kirkel had retained "to represent her regarding her dealings with BBG"?

The answer is that she would not, nobody would.  Clearly she went into the meeting and was tag teamed by Ms. Long and Ms. Bajramovic.  Although she already had an attorney, Mr. Schlosser, for her bankruptcy matter, they scared her into calling her friend to get the name of another attorney.  She chose a foreclosure attorney because that is what Ms. Long and Ms. Bajramovic were threatening.

And where is the affidavit of Nurma Bajramovic?   Well, within a few days of this motion for sanctions being filed her employment with Bridgeview Bank Group was terminated after 9 years with them.   She has refused to discuss the case with the Debtor's attorney.  Her resume may be found at http://www.linkedin.com/pub/nerma-bajramovic/6/9b7/589.

Any attempt to collect a discharged debt is a violation and the standard is objective.  It does not even require a bad motive on the part of BBG.   The court should not have found that no violation occurred when the bank admits they set up the meeting to discuss the discharged loans, and the bank admits it bypassed her attorney because he would now return the calls of the bank's attorney.

**E. The bank officials cannot go directly to the debtor because her attorney will not return the calls of their attorney.**

The bank told Ms. Kirkel that she needed to get another lawyer.  The debtor had already consulted with her lawyer, Mr. Schlosser and made the decision not to reaffirm the loan after the consultation.  The bank official's actions had the effect of making her

feel that she had to get a new lawyer, to question the advise she had been receiving from

her attorney.   The creditor has no right to get between the Debtor and her attorney.

**F.  The letters the bank kept sending to the debtor were improper attempts to**

    **collect the discharged debt.**

During the entire process, the bank continued to send her bills on the discharged

condominium loan showing arrearages owed ($2,099.60 on the August 31, 2012

statement) as well as late fees and other charges.  **See Debtor's Evidentiary Statement**

**Exhibits W, X, and Y**.

The sending of the letters itself was a violation of the discharge injunction of

524(a)(2).


**G. The communications from the bank's attorney were attempts to collect on a**

    **discharged debt.**

The communications from the attorney for the bank were clear, reaffirm 55% of the

discharged condo loan or they will foreclose on the commercial loan.  The Debtor's

attorney would not return his calls so he had the bank contact the Debtor directly to get

negotiations going again.  But reaffirmation agreements are only valid if entered into

before the discharge order, they cannot be entered into afterwards as discussed above.

Mr. Grossman was ready and expecting a call when the undersigned attorney first called.

He said he had case law that allowed him to take the actions he was taking in tying the

discharged loans together in negotiations for a reaffirmations.

Mr. Grossman is correct in that he may make a demand to reaffirm both loans in

negotiations for a reaffirmations.  But, Mr. Grossman is wrong in that:

1. Reaffirmations may not take place once the discharge is entered;

2. Creditors cannot bypass the debtor's attorney to get negotiations going with the debtor herself (even if through the creditor), nor have the debtor get a new attorney;

3. Once it was clear that Ms. Kirkel was not going to reaffirm her debt since her attorney was not returning phone calls he should have stopped;

4. The negotiations to reaffirm a debt, even if during the bankruptcy cannot be coercive or meant to harrass;

5. The creditor cannot make threats of repossession.

The question of what constitutes coercion or harassment in post-discharge reaffirmation negotiations under 524(2)(c) is a not really defined since such reaffirmations are not allowed.  But clearly, even the negotiations themselves are a violation.  The line between actions that violate the discharge injunction and those that are permissible following a bankruptcy discharge is not always easy to delineate. *In re Lumb,* 401 B.R. 1 (1st Cir.BAP 2009); *In re Burkepile,* 2010 WL 3501814 (Bankr.N.D.Ohio 2010). A creditor's exercise of legitimate state court rights, pursued in a harassing and coercive manner, resulting in repayment of a discharged debt, may violate the discharge injunction. *In re Paul,* 534 F.3d 1303 (10th Cir. 2008); *In re Pratt,* 462 F.3d 14 (1st Cir. 2006). Although noting its application should be rare, the Seventh Circuit has recognized the "coercive effects" test. *In re Kuehn,* 563 F.3d 289 (7th Cir. 2009). The pursuit of *in rem* rights, only as a subterfuge to collect a discharged debt from the debtor personally, violates the discharge injunction. *See In re Evans,* 289 B.R. 813 (Bankr. E.D.Va. 2002). Each case must be decided on its particular facts. *Pratt,* 462 F.3d

at 19, In re Butler, 09-8101 (C.D. Ill. 2011). **If the bank wanted to foreclose they could have foreclosed. They decided to use the threat to get the discharged condo loan partially paid and only began foreclosure to fulfill their threat. They crossed the line.**

### H. Debtor was damaged.

The court felt the debtor was not damaged because the bank could have caused the same emotional damages by filing the foreclosure against the debtor's commercial property. The court neglected to realize that there was more happening to the emotional state of the debtor because of the creditor's actions. She knew that the bank could file a bankruptcy on the commercial property. However, she was making the payments on the commercial loan and justifiably believed that the bank would not foreclose on a second mortgage where the payments were being made. The bank is not allowed to use the foreclosure of the commercial loan as leverage to get another discharged debt paid, that is a prohibited act. *In re Pratt,* 462 F.3d 14 (1st Cir. 2006). Perhaps the first mortgage holder would start foreclosure before BBG, that would have changed the equation totally. In the real estate market of early 2012 BBG would most likely not foreclose on a loan that it was receiving payment on. It was only their desire to get the condo loan paid that increased their desire to foreclose. Kirkel was taking a calculated risk that BBG would not foreclose anytime soon, if ever.

Ms. Kirkel was represented by a bankruptcy attorney, Mr. Schlosser. The bank's actions made her insecure as to the advise he was giving to the point where she had to get a new attorney.

The bank's actions caused her to make decisions immediately. A foreclosure takes

many months and she had options, she could repay the debt, refinance the debt, sell the

property.  The bank's actions were demanding an immediate decision and forced her to

reconsider decisions she had already made with her bankruptcy attorney.  The court's

reasoning that she would have incurred the same damages if the bank had merely filed

foreclosure are flawed.  Timing is everything. A foreclosure beginning a year later with a

rising real estate market is much less of a threat than an immediate foreclosure.  The

anxiety of the debtor would be much greater and options fewer.  Absent the use as

leverage the bank would not have foreclosed upon the loan where the payments were

being made.  A 40 year old will die eventually while a 95 year old will die fairly soon.

To demand that the 40 year old make estate decisions now, which a 95 year old would be

negligent in not having already made, is not the same even though either may die the next

day.  The 40 year old has he right to play the odds that he will not die the next day and

wait on making certain decisions.  The bank and their attorney do not have the right to

demand that the 40 year old seek the advise of a new physician.  Ms. Kirkel had the right

to bet that the bank would use good judgment.  Ms. Kirkel had the right to expect that the

bank would not make the threat of foreclosure to force the payment of the discharged

condo loan.  If the bank really wanted to foreclose they should have foreclosed.  Adding

in the threats and the tying of the 2 loans post-discharge makes all the difference.

**I.  This importance of this matter goes far beyond an inadvertent or even a**

   **deliberate violation of the discharge injunction.**

In this case the bank was not able to reach a reaffirmation agreement with the Debtor

going through her attorney.  The bank kept trying up until the discharge was entered to no

avail.  Since the bank could not reach agreement but still wanted to collect something on

the discharged condo loan they brought the debtor into the bank to try and reach an

agreement outside the influence of her attorney.  They failed to reach an agreement but

did scare her into getting a new lawyer.

   This court in ruling that the bank's and their attorney's efforts to collect on the

discharged condo loan with the procedure outlined above was not a violation would

create a new avenue for creditors to collect discharged debts.  It is an act to collect a

discharged debt and violates 524(a)(2).   It should not have merely been termed

communication, nor was it communication between attorneys, it was calculated, it

bypassed the attorney client relationship, and it was wrong.


WHEREFORE, the debtor requests that the Feb 6, 2013 order be amended as follows:

1.  Finding Bridgeview Bank Group and its in-house counsel, Joshua Grossman in

    contempt for their actions as outlined above,

2. Awarding damages, both compensatory and punitive, plus all attorney fees and costs

    incurred in bringing this action against Bridgeview Banking Group, and Joshua

    Grossman for violation of the discharge order and injunction,

3. For injunctive relief forbidding the bank to take any action to continue the foreclosure

    against the Clark Street property either as leverage to force the Debtor to reaffirm or

    otherwise pay the discharged debt on the Sheridan condominium,

4. For an order under section 105 of the bankruptcy code to restructure any debt

    remaining on the Clark Street property bringing the interest rate down to a current

    market rate of and amortizing the loan so it may no longer be used as a weapon.

JOHN F. CLOUTIER


By:   /s/ John F. Cloutier
        Attorney
John F. Cloutier (6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
| Debtor. | ) | Hon. Timothy A. Barnes |
| | ) | |
| | ) | Date: 5/7/2013 |
| | ) | Time: 10:00 Room 642 |

## ORDER TO ALTER OF AMEND ORDER GRANTING IN PART, DENYING IN PART, MOTION FOR SANCTIONS

THIS MATTER COMING TO BE HEARD upon the Debtor's Motion for Sanctions against Bridgeview Bank, their attorney Joshua Grossman, and their attorney Kevin Ameriks; due and proper notice of the motion having been given to all relevant parties; the Court finds:

1. The Court has jurisdiction over the subject matter of this proceeding and the parties thereto;

2. That Bridgeview Bank, its attorney Joshua Grossman, and its attorney Kevin Ameriks are in contempt for violating the discharge stay of section 524(a) of the bankruptcy code;

3. That Bridgeview Bank has knowingly and purposefully used its position as the holder of a note and mortgage on the Debtor's property at 5025 North Clark Street, Chicago, IL 60640 in an attempt to collect on another already discharged debt;

4. That Bridgeview Bank may again use the note and mortgage on the property at 5025 North Clark Street, Chicago, IL 60640 in an improper because of the way it is structured.

5. The actions of Bridgeview Bank and its attorneys have caused financial damages to the Debtor by causing her to hire an attorney to fight the improper actions of their threats, legal fees in fighting the foreclosure, legal fees in seeking to collect her rents after her tenant learned of the foreclosure action.

6. The actions of Bridgeview Bank and its attorneys have caused emotional damages that are tied to the financial damages.

IT IS HEREBY ORDERED THAT:

A.      The Debtor shall be granted her attorneys fees dealing with this matter, and for bringing this and related motions in the amount of _____.

B.      That any unpaid portion of the note and mortgage against Debtor's property at 5025 North Clark Street, Chicago, IL 60640 shall be restructured so as to constitute a note fully amortized over 25 years, bearing a fixed interest rate equal to the lowest Wall Street Journal Prime Rate that existed from when Bridgeview Bank first contacted the Debtor with a demand to reaffirm the discharged debt until the date of this order.

ENTERED:

_____
UNITED STATES BANKRUPTCY JUDGE

John F. Cloutier (6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 11-47270 |
| JUALYNN M. KIRKEL, | ) | Ch: 7 |
| | ) | Hon. Timothy Barnes |
| Debtor. | ) | |

## OBJECTION TO MOTION TO REOPEN

BRIDGEVIEW BANK GROUP, BRIDGEVIEW BANK & TRUST, JOSHUA GROSSMAN, and KEVIN AMERIKS (collectively, "Bridgeview"), by and through their attorney Adam B. Rome of Greiman, Rome & Griesmeyer LLC, hereby submits this Objection to Jualynn M. Kirkel's ("Debtor") Motion to Reopen, and states as follows:

1.     Debtor's Motion to Reconsider and Motion to Open should be denied.

2.     Debtor, without citing any authority or basis under the law, is requesting this Court reopen this Chapter 7 case in order to "pursue a Motion to Alter or Amend Order Granting in Part, Denying in Part, Motion for Sanctions." (*See*, Debtor's Motion to Reopen, p. 1, Dkt. 75)

3.     As Debtor offers no new evidence, nor specifies any viable error of law, and further fails to offer any compelling reason or cause to reopen, the instant Motion rings hollow and should be denied.

4.     As the Court will recall, Debtor received a Discharge Order on or about March 9, 2012.  Subsequent to the Discharge, Debtor filed a Motion for Sanctions against Bridgeview for alleged violations of the automatic stay ("Sanction Motion").  (Dkt. 35)

5.     The Court sought evidence from the parties related to the Sanction Motion, received briefs from the parties, and heard oral argument on February 6, 2013.  On February 7, 2013 the Court rendered its decision as to the Sanction Motion, and again closed this case.

ROA 11 B 47270

6.      Section 350(b) of the Bankruptcy Code permits a debtor to reopen its case *only* upon establishing a "compelling" reason, and upon showing "cause" for its bankruptcy case to be reopened.  *In re Redmond*, 380 B.R. 179, 185 (N.D. Ill. 2007).  The moving party bears the burden of demonstrating cause to reopen, as the debtor does not have a right of "eternal access" to federal courts for all disputes related in some way to debts handled in bankruptcy proceeding. *Id.,* at 190.

7.      The only "cause" cited by Debtor in this case to establish her "compelling reason" to reopen the case is that she "believes" that certain errors in law were made in the February 7, 2013 ruling.  (See. Dkt. 75, ¶5).

8.      In effect, Debtor is asking this Court to *reconsider* its February 7, 2013 ruling, but fails completely to set forth the necessary elements for such reconsideration.

9.      The intended purpose of a motion to reconsider pursuant to 735 ILCS 5/2-1203 is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. *See S.H.A. Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill.App.3d 15, 919 N.E. 2d 383 (2009).

10.     Here, Debtor has failed to set forth any newly discovered evidence, or changes in the law, and only proffered her "belief" that the Court erred in its decision.  As such, there is no basis for reconsideration.

11.     It is abundantly clear that Debtor is simply attempting to delay Bridgeview's foreclosure against the Debtor's property, currently pending in the Circuit Court of Cook County, Illinois.  However, Bridgeview's foreclosure was properly filed.  Bridgeview's lien on the Debtor's property survived the discharge entered in this case, and the underlying loan has been delinquent for over a year.

12.     Exemplifying Debtor's attempt to delay the foreclosure is an email from Debtor's counsel, dated  February 20, 2013, wherein counsel states that, "we cannot let the property be foreclosed on," and goes on to set forth his intention to delay the proceedings with the aid of this Court.  (*See*, February 20, 2013 email attached hereto as Exhibit A)

13.     In sum, Debtor has failed to meet her burden of establishing cause, and has further failed to set forth a compelling reason to reopen this case pursuant to Section 350(b).  Debtor has similarly failed to proffer any new evidence, new law, or specific errors in application of law, necessary to warrant reconsideration of this Court's February 7, 2013 ruling.  As such, Debtor's Motion to Reopen must be denied.

WHEREFORE, Bridgeview Bank Group, Bridgeview Bank & Trust, Joshua Grossman and Kevin Ameriks respectfully request this Court deny Debtor Jualynn M. Kirkel's Motion to Reopen, and for such other and further relief s this Court deems equitable and just.

BRIDGEVIEW     BANK     GROUP,
BRIDGEVIEW   BANK   &   TRUST
JOSHUA   GROSSMAN  AND  KEVIN
AMERIKS


By:  /s/ Adam B. Rome_____
            One of its Attorneys

Adam B. Rome (ARDC #6278341)
Lisa M. Fontoura (ARDC # 6273876)
GREIMAN, ROME & GRIESMEYER, LLC
200 West Madison, Suite 755
Chicago, Illinois  60606
(312) 428-2750
(312) 332-2781 (fax)

ROA 11 B 47270

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2013, I electronically filed the foregoing with the Clerk of the Court via the CM ECF System which will send notification of such filing to the individuals registered to receive notices via email transmission with the Court's ECF System including but not limited to:

Debtor's Counsel:     John F Cloutier     JohnCloutierLaw   aol.com

 S Trustee:     atrick S Layng      ST  Region11.ES.ECF   usdoj.gov

Trustee:       Deborah Michelle Gutfeld     <u>gutfeldch7   perkinscoie.com,</u>
dgutfeld   ecf.epiqsystems.com cdennis    nge.com

David Richardson     drichardson   neryrichardson.com

Gloria C Tsotsos     nd-three    il.cslegal.com


By:  _/s/ Adam B. Rome _____ _____
                 Adam B. Rome (ARDC #6278341)
                 GREIMAN, ROME & GRIESMEYER, LLC
                 200 West Madison, Suite 755
                 Chicago, Illinois 60606
                 (312) 428-2750
                 (312) 332-2781 (facsimile)
                 arome   grglegal.com

# EXHIBIT A

**From:** John Cloutier [mailto:johncloutierlaw@aol.com]
**Sent:** Wednesday, February 20, 2013 7:13 PM
**To:** Adam Rome
**Subject:** Motion to Reconsider

Hi Adam,

After looking closely at the judge's ruling I still believe it is in error so I filed a motion to reconsider and reopen the case.

If he reads my motion I think he will reopen.

If not then we will appeal the decision.

As I said previously, we cannot let the property be foreclosed upon. We might be able to get the sale done in a couple of months but sales can take a while to complete in this market. So far the buyer still is anxious to buy the property but wants to give the tenant time to get some things taken care of before closing.

In my last email I suggested that she might get a cosigner to make the bank feel more comfortable in extending the loan but never heard back. They might want to take another look at that. I will propose that to pacific global too.

John

Attorney John Cloutier
5923 S. Kolmar
Chicago, IL 60629
847-275-6358
JohnCloutierLaw@aol.com

ROA 11 B 47270

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
| Jualynn M. Kirkel | ) | Case No. 11-47270 |
| Debtor. | ) | Hon. Timothy A. Barnes |
|  | ) |  |
|  | ) | Date: May 9, 2013 |
|  | ) | Time: 10:00 Room 642 |

## AMENDED NOTICE OF MOTION

To: See Service List

PLEASE TAKE NOTICE that on **5/9/2013 at 10:00 am.** or as soon thereafter as counsel may be heard, we will appear before United States Bankruptcy Judge Timothy A. Barnes, or any other judge sitting in her stead, in Courtroom 642 of the Dirksen Federal Courthouse, 219 S. Dearborn Street, Chicago, Illinois, on the PREVIOUSLY SENT, **MOTION TO ALTER OR AMEND ORDER GRANTING IN PART, DENYING IN PART, MOTION FOR SANCTIONS**, at which time and place you may appear as you see fit.

JOHN F. CLOUTIER

By:   /s/ John F. Cloutier
        Attorney
John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

## CERTIFICATE OF SERVICE

I, John F. Cloutier, hereby certify that I caused a copy of the following documents that were filed with the Clerk of the Bankruptcy Court on 4/2/2013:

**MOTION TO ALTER OR AMEND ORDER GRANTING IN PART, DENYING IN PART, MOTION FOR SANCTIONS** to be served on the parties listed on the attached Service List by the Court's ECF system and/or U.S. Mail, postage prepaid, on 4/02/2013.


### SERVICE LIST

Notice was sent by first class mail to the following parties:

Jualynn Kirkel, 6145 N. Sheridan Road, #30C, Chicago, IL 60660-6855

Notice was sent to the following parties through the court's electronic noticing center.

E-mail/Text: Adam Rome <arome@grglegal.com> Adam B. Rome, Kreiman, Rome & Griesmeyer, LLC, 200 W. Madison St, Ste 755, Chicago, IL 60606. Attorney for Bridgeview Bank Group, Kevin Ameriks, Josh Grossman.

JOHN F. CLOUTIER
By:  /s/ John F. Cloutier
        Attorney

John F. Cloutier ( 6244415)
5923 S. Kolmar Ave
Chicago, IL 60629
Phone: (847) 275-6358
Fax: (727) 865-5272

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | BK No.:    11-47270 |
| Jualynn Kirkel | ) | |
| | ) | Chapter:  13 |
| | ) | Honorable Timothy A. Barnes |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

### Order Denying Motion for Failure to Comply with Local Bankruptcy Rule 9013-1(E)

THIS MATTER COMING TO BE HEARD upon the Debtor's Motion to Reopen Chapter 7 Case (the "Motion"); due notice having been given; and the Court being duly advised in the premises;

The Court finds:

(a) The Motion was filed on February 20, 2013;

(b) In accordance with Local Bankruptcy Rule 9013-1(E), every motion must be presented within 30 days after the motion has been filed;

(c) The Motion was presented on April 2, 2013, more than 30 days after the filing of the Motion;

(d) In accordance with Local Bankruptcy Rule 9013-1(G), the Court may, in its discretion, deny any motion that does not comply with Local Bankruptcy Rule 9013-1(E);

Therefore, IT IS HEREBY ORDERED THAT:

The Motion is denied for failure to comply with Local Bankruptcy Rule 9013-1(E).

Enter:

Dated:  - 2 APR 2013

United States Bankruptcy Judge

Prepared by: